**UNITED STATES v. DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION NO. 639 OF INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, STABLEMEN AND HELPERS OF AMERICA et al., an association.**

No. 64706.

District Court of the United States for the District of Columbia.

March 26, 1940.

David A. Pine, U. S. Atty., of Washington, D. C., and Gordon Dean, Sp. Asst. to Atty. Gen., for the United States.

Joseph A. Padway and John K. Keane, both of Washington, D. C., for defendants.

GORDON, Justice.

This is a criminal prosecution under Section 3 of the Sherman Anti-Trust Act, Act of July 2, 1890, c. 647, 26 Stat. 209, 15 U.S.C. Sec. 3; 15 U.S.C.A. § 3.

The defendants are six in number. They are the Drivers, Chauffeurs and Helpers Local Union No. 639 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America; Thomas O'Brien, a representative of the International Brotherhood; and four officers or representatives of the Drivers Local No. 639.

The indictment charges, in substance, that from about May 16, 1939, continuously up to the date of the finding of the indictment, the defendants, in violation of the Sherman Anti-trust Act, unlawfully engaged, within the District of Columbia, in a combination and conspiracy to restrain trade and commerce, to wit, the construction of buildings and other public and private works and the trade and commerce in materials used or to be used, in the construction of said buildings and public and private works; and that it was part of said conspiracy that said restraint would be, and it was, effected by the employment of strikes, boycotts and by threats to use, and the use of, force and violence.

The defendants have filed a demurrer and alternative motion to quash the indictment.

The first and second grounds of the motion to quash will be first considered together. The defendants urge:

"1. That the said indictment is indefinite, vague and uncertain, and does not fully inform the defendants of the charges against them and each of them and they are unable to understand the indictment

and to plead against the same and to prepare and defend themselves against the said indictment.

"2. That the charge contained in said indictment is so general, vague, indefinite and uncertain that it could not be pleaded as res adjudicata or former jeopardy."

The section of the statute upon which this indictment is based is very brief and, insofar as here pertinent, provides as follows: "Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or of the District of Columbia * * * is declared illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

In the indictment before the court each defendant is adequately described. The Drivers Local No. 639 is described as "an association having its principal place of business at Washington, District of Columbia." The five individual defendants are described by name and by their official connection with the International Brotherhood and the Drivers Local No. 639. It is charged, following the language of the statute, that the defendants "engaged, within the District of Columbia, in a combination and conspiracy to restrain trade and commerce of, and in, the District of Columbia." It is then specified that the trade and commerce sought to be restrained was "the construction of buildings and other public and private works in the District of Columbia, and the trade and commerce in materials used, or to be used, in the construction of said buildings and private and public works." The venue is consistently laid in the District of Columbia, and the time is described as being a continuous period between May 16, 1939, and the date of the indictment, which was returned on October 12, 1939.

The indictment then proceeds to elaborate the alleged conspiracy. It is alleged that it was part of the conspiracy to induce and compel the Howat Concrete Company, the Maloney Concrete Company and the Super Concrete Corporation, which owned and operated more than 50 per cent of all "mixer" concrete trucks in the District of Columbia, to employ, as drivers and operators of said trucks, only members of the Drivers Local No. 639, and to compel said companies to breach contracts previously entered into and then in full force and effect, between the International Union of Operating, Engineers Local No. 77 and said companies, in which contracts said companies had contracted and agreed to employ, and were employing, 75 per cent of the drivers and operators on said trucks from the membership of said Operating Engineers Local No. 77; that it was further part of the conspiracy to compel drivers and operators of said trucks, then in the employ of said companies, to resign from or otherwise terminate their membership in said Operating Engineers Local No. 77 and compel them to become members of the Drivers Local No. 639; that it was further part of said conspiracy that, to accomplish and effectuate these purposes, the defendants would, and they did, threaten the calling of strikes, urge, induce and assist in the calling of strikes by members of the Drivers Local No. 639 on various construction projects in this District, the purpose and effect being to stop construction work on said projects; that it was further part of said conspiracy to prevent, by threat of force and by force, and defendants did so prevent, the delivery of concrete to said projects by "mixer" concrete trucks driven and operated by persons not members of Drivers Local No. 639.

In the final paragraph of the indictment, under the heading "Purpose and Object of Conspiracy," it is set forth that the intent and effect of this conspiracy and of the acts done in pursuance thereof, was to restrain trade and commerce in this District and to impose an unreasonable burden thereon; and that said conspiracy was formed and carried out for the sole object of replacing members of the Operating Engineers Local No. 77 with members of the Drivers Local No. 639 in the operation of these "mixer" concrete trucks.

The indictment, as a whole, does not appear to me to be indefinite, vague or uncertain, nor do I perceive why defendants are unable to understand it and plead to it. Defendants' chief complaint in this respect seems to be that the indictment does not set out with more particularity, as to names, dates, places and methods, the force, violence and threats referred to. If more specific information as to the acts of force and violence and the threats would be help-

ful, defendants may obtain such information by way of a bill of particulars.

I am of opinion that the first and second grounds of the motion to quash are without merit. See Sec. 1025, R.S., 18 U.S. C. Sec. 556, 18 U.S.C.A. § 556; Nash v. United States, 5 Cir., 186 F. 489, reversed on other grounds, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232; Beard v. United States, 65 App.D.C. 231, 234, 82 F.2d 837; United States v. Brookman, D.C., 1 F.2d 528.

The demurrer and motion to quash both state that the indictment fails to charge any offense against the laws of the United States, and this general objection is elaborated by the third and fourth grounds of the motion to quash, namely:

"3. That said indictment discloses on its face that the alleged conspiracy was formed and carried out, and the acts thereunder committed, for an object and with an intent not prohibited by any laws of the United States, to-wit: the replacing of members of the International Union of Operating Engineers, Local No. 77, with members of the Defendant association.

"4. That the alleged conspiracy and the acts accompanying the same are expressly exempt from the operation of the said Sherman Anti-Trust Act (26 Stat. 209) by the provisions of the Clayton Act (38 Stat. 738), particularly Sections 6 and 20 thereof [15 U.S.C.A. § 17, 29 U.S.C.A. § 52]."

Sec. 6 of the Clayton Act provides: "The labor of a human being is not a commodity or article of commerce. Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor * * * organizations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws."

Sec. 20 of the Clayton Act provides:

"No restraining order or injunction shall be granted by any court of the United States, or a judge or the judges thereof, in any case between an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment, involving, or growing out of, a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property, or to a property right, of the party making the application, for which injury there is no adequate remedy at law, and such property or property right must be described with particularity in the application, which must be in writing and sworn to by the applicant or by his agent or attorney.

"And no such restraining order or injunction shall prohibit any person or persons, whether singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising, or persuading others by peaceful means so to do; or from attending at any place where any such person or persons may lawfully be, for the purpose of peacefully obtaining or communicating information, or from peacefully persuading any person to work or to abstain from working; or from ceasing to patronize or to employ any party to such dispute, or from recommending, advising, or persuading others by peaceful and lawful means so to do; or from paying or giving to, or withholding from, any person engaged in such dispute, any strike benefits or other moneys or things of value; or from peaceably assembling in a lawful manner, and for lawful purposes; or from doing any act or thing which might lawfully be done in the absence of such dispute by any party thereto; nor shall any of the acts specified in this paragraph be considered or held to be violations of any law of the United States."

First, with reference to Sec. 6 of the Act: Nowhere in this indictment is it stated directly that defendant Drivers Local No. 639 is a "labor union" or a labor organization instituted for the purposes of mutual help and not having capital stock or conducted for profit. It is described merely as "an association having its principal place of business" in Washington, D. C. However, since its name, as well as the activities ascribed to it in the indictment, indicate that it is one of the class of organizations referred to in Sec. 6, and since counsel for both sides have based their arguments upon the tacit assumption that it is such an organization, it may be considered, for the purposes of this discussion, that it is a labor organization within the meaning of Sec. 6.

█ It will be observed here that Sec. 6 of the Clayton Act does not give, and was not intended to give, to labor organizations a blanket exemption from the operation of the anti-trust laws. Sec. 6 of the Act legalizes the existence and operation of labor organizations and protects the individual members thereof in carrying out, in a lawful manner, the objects thereof which are legitimate.

Two questions are presented under this branch of the case: First, whether the object of the conspiracy is a legitimate one; and, second, whether, if the object is legitimate, the conspiracy alleged embraces the "carrying out" or attainment of that object in a lawful manner.

█ 1. Is the object of the conspiracy in this case a legitimate one? It must be borne in mind that the object of the conspiracy is not to obtain higher wages, or shorter hours or better conditions of labor, nor is it in furtherance of "unionization" as that term is generally understood. The object is to replace members of the Operating Engineers Local No. 77 with members of the Drivers Local No. 639 in the driving and operation of the "mixer" concrete trucks of the three companies involved. And in considering the legitimacy of the object in the instant case this "replacement" must be viewed in the light of the fact that these three companies had binding contracts with the Operating Engineers union to employ 75 per cent of the drivers and operators of these "mixer" trucks from members of that union, and that they actually were employing that percentage of the drivers and operators from the membership of that union.

It is my opinion that the object was not legitimate for the reason that the replacement which defendants were attempting to compel would necessarily force these companies to breach their contracts with the Operating Engineers union.

I think that the object of the conspiracy was further illegitimate in that it was contrary to the spirit and policy of the National Labor Relations Act, as set forth in Sec. 1 of that Act, 29 U.S.C. Sec. 151, 29 U.S.C.A. § 151. According to the indictment in this case, prior to the alleged conspiracy there three "mixer" companies had entered into contracts with the Operating Engineers union to employ 75 per cent of the operators and drivers of these "mixer" trucks (apparently the person employed on one of these trucks both drives and operates it) from the membership of that union, and they actually did employ that percentage from that union. The indictment clearly shows on its face that the employees of these three companies who were working on these trucks and who were members of the Operating Engineers union constituted a majority of such employees and would be entitled to select representatives for the purpose of collective bargaining. The indictment further indicates that the Operating Engineers union is the collective bargaining agency for the majority and has exercised its bargaining powers by entering into contracts with the three "mixer" companies involved. It seems obvious that the purpose and intent of the conspiracy of defendants herein was to nullify and break down the results of collective bargaining between the Operating Engineers union and the "mixer" companies.

█ 2. But assuming, as defendants' counsel contend, that the object of the conspiracy in this case was legitimate and reasonable under the circumstances, yet Sec. 6 of the Clayton Act protects the defendants only when the means which they employ to carry out or attain that object are lawful.

The means set forth in Par. 4 of the indictment, namely, the prevention, by threat of force and by actual force, of delivery of concrete to construction projects by "mixer" trucks driven and operated by persons other than members of the defendant union, was clearly unlawful.

In Par. 3 of the indictment is set forth another means, alleged to have been employed by defendants to effectuate the replacement of members of the Operating Engineers union by members of the defendant union in the operation of these "mixer" trucks: "That it was further part of said conspiracy that, to accomplish and effectuate the purposes set forth in the two paragraphs immediately preceding, the defendants would, and they did, threaten the calling of strikes, and that they would, and they did, urge, induce, and assist, in the calling of such strikes by members of the Drivers, Chauffeurs and Helpers Local Union No. 639, on various construction projects in the District of Columbia, the purpose and effect of which,

was to stop construction work on said projects."

If, as I hold, the object of the conspiracy was not legitimate, it is immaterial whether the conduct alleged in Par. 3 is lawful or not. On the other hand, if I should be wrong as to the legitimacy of the object of the conspiracy, the indictment nevertheless, in Par. 4 thereof, alleges means which are clearly unlawful and which are separate and distinct from the conduct set forth in Par. 3. That being true, the indictment states a violation of Sec. 3 of the Sherman Act not within the exemption of Sec. 6 of the Clayton Act, for under the latter section not only must the object be legitimate, but the means employed to effectuate the object must be lawful.

The defendants' brief is devoted, almost in its entirety, to argument in support of the legality of the means set forth in Par. 3 of the indictment. Government counsel argue at length that the conduct set forth in Par. 3 was, under the circumstances of this case, unlawful.

The court is unable to determine the legality of the means set forth in Par. 3 of the indictment. It is not a case of applying conflicting principles of law to a definite, admitted state of facts, but rather a case of being unable to determine what the facts are in order to apply the law. Counsel differ as to what facts are alleged, in this aspect of the case, and the court, from an independent study, is unable to determine them.

Defendants argue that what is pleaded is that defendants urged, induced and assisted strikes by members of the defendant union, among whom were employees of the three companies involved, and cite cases to sustain their view of the law in that situation. The difficulty with applying defendants' law is that the indictment nowhere alleges that any members of the defendant union were employees of these three companies. The only union affiliation of the employees of these companies appears in Par. 1 of the indictment, where it is stated that 75 per cent of such employees were members of the operating engineers union. Absolutely nothing is stated as to the other 25 per cent; they may have been affiliated with no union at all, or with the defendant union, or with other unions. Defendants' counsel argues that since it alleged that defendants urged,

induced and assisted in the calling of strikes by members of the defendant union, members of the defendant union must have occupied the status of employees. That may be true. Obviously a strike cannot exist without the employer-employee relationship. But the indictment does not allege that any members of the defendant union who struck were employees of the three "mixer" companies. Indeed, the theory of the Government, as set forth in its briefs, is that the indictment charges that the strikes referred to in Par. 3 were called on various projects against employers other than these three mixer companies, and with whom the defendants had no dispute. Defendants' counsel argues that "this 25 per cent of employees or some of them must have been members" of the defendant union. That is mere argument. The indictment does not so state, and I am not at liberty to read into it what is not there.

The Government, as just indicated, takes the position that no members of the defendant union were among the other 25 per cent of the employees of these companies on these "mixer" trucks, and the strikes in question were called against employers other than the three "mixer" companies for the purpose of forcing such other employers to put pressure upon the "mixer" companies to accede to the demands of defendant union. The Government bases its contentions as to the illegality and unreasonableness of these strikes upon the proposition that an employer-employee relationship did not exist between the three "mixer" companies and members of the defendant union. Here again the difficulty is that the indictment does not allege the vital fact upon which that contention is based.

■ Obviously the court cannot apply the law in the cases cited by counsel when it is unable to determine whether the facts admitted by the demurrer, with relation to the strikes mentioned in Par. 3, would bring this case within the principles laid down in those cases. It would be pointless to enter upon an abstract discussion of the law of strikes.

■ As to Sec. 20 of the Clayton Act: The first paragraph of Sec. 20 is merely a limitation upon the power of the federal courts to grant injunctions in certain specified types of disputes. The second paragraph of Sec. 20 prohibits the

restraining and enjoining of specified acts, and concludes:

"nor shall any of the acts specified in this paragraph be considered or held to be violations of any law of the United States." The conduct constituting the means set forth in Par. 4 of the indictment is not embraced within any of the provisions of this paragraph of Sec. 20. On the contrary, the acts set forth in said second paragraph of Sec. 20 are consistently described therein as "peaceful" and "lawful."

I find nothing either in Sec. 6 or in Sec. 20 of the Clayton Act which makes legitimate and lawful either the object of this conspiracy or the means, set forth in Par. 4 of the indictment, to attain that object.

Defendants further rely upon the provisions of the Norris-LaGuardia Act, 29 U.S.C. Secs. 101–115, 29 U.S.C.A. §§ 101–115, which extends the prohibitions of the Clayton Act in respect of the jurisdiction of federal courts to grant injunctions in labor disputes. This act is limited by its terms to civil injunction suits, the purpose of the act being further to limit the use of the injunctive remedy, and prevent possible abuse of that remedy, in labor controversies.

Irrespective of whether the controversy which appears from this indictment is or is not a "labor dispute" within the broad interpretations which have been put upon Sec. 13 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 113, 29 U.S.C.A. § 113 and regardless of whether the conduct set forth in Par. 4 of the indictment is enjoinable or not, such conduct is unlawful, and when an indictment alleges a conspiracy by any persons, formed to employ such unlawful conduct as a means to attain an object, legal or illegal, and the intent and effect of such conspiracy is to restrain trade and commerce within the District of Columbia, such indictment alleges a violation of Sec. 3 of the Sherman Act.

The allegations as to the prevention, by threat of force and by force, of delivery of concrete in "mixer" trucks not operated by members of the defendant union, to various construction projects within this District, show a direct, unreasonable and unlawful restraint of trade and commerce in this District.

The demurrer is overruled and the motion to quash is denied. Defendants are given 20 days within which to plead to the indictment.