32 F.Supp. 600 (1940)
UNITED STATES
v.
HUTCHESON et al.
No. 21231.
District Court, E. D. Missouri, E. D.
March 29, 1940.
*601 Thurman Arnold, Roscoe T. Steffen, William M. Marvel, James McI. Henderson, Paul V. Ford, and Wilber Stammler, all of Washington, D. C., for plaintiff.
Joseph O. Carson, II, and Joseph O. Carson, Sr., both of Indianapolis, Ind., Charles H. Tuttle and Thomas E. Kerwin, both of New York City, and Munro Roberts and Bryan Purteet, both of St. Louis, Mo., for defendants.
DAVIS, District Judge.
Four officers of the United Brotherhood of Carpenters and Joiners of America are indicted under the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, and are alleged to have conspired to restrain interstate commerce. The acts set out in the indictment were the outcome of a jurisdictional dispute at Anheuser-Busch, Inc., between defendants' union, which is affiliated with the American Federation of Labor, and the International Association of Machinists, also affiliated with the A. F. L. Defendants contended their members should be exclusively entitled to perform the work of erecting, repairing and dismantling machinery that was being done by the Machinists.
The indictment alleges that defendants picketed or caused to be picketed the premises of Anheuser-Busch, Inc., and the premises of its tenant, Gaylord Container Corporation, the latter adjoining the premises of Anheuser-Busch, Inc.; that defendants refused to allow their members to be employed by Borsari Tank Corporation of America, which was about to construct a tank building for Anheuser-Busch, Inc.; that defendants refused to allow their members to be employed by L. O. Stocker Company, which had a contract to build an office building for Gaylord Container Company; and that defendants distributed circulars and letters and caused notices to be printed throughout the country in "The Carpenter", the official publication of defendants' union, denouncing Anheuser-Busch, Inc., as unfair to organized labor and calling upon all union members and friends of organized labor to refrain from purchasing and drinking beer brewed by that company.
Restraint of interstate commerce is alleged to have been attempted (1) through the publication of such circulars and notices throughout the country, intended to prevent the transportation of beer from Missouri to other states; (2) through what is alleged to be a "boycott" of the Borsari Company, which was prevented from shipping materials into Missouri from other states for the construction of the tank building; (3) through what is alleged to be a "boycott" of the Stocker Company, which was prevented from shipping materials into Missouri from other states for the construction of the office building for the Gaylord Container Corporation; and (4) through the picketing of the Anheuser-Busch plant and the premises of Gaylord Container Corporation, which was intended to cut off the manufacture and consequent shipping of beer and other products in interstate commerce by those companies.
*602 Defendants have filed separate demurrers, which have been argued and briefed and are now for determination.
The definition of an unlawful conspiracy under the Sherman Act is given in Duplex Printing Press Co. v. Deering, 254 U.S. 443, 465, 41 S.Ct. 172, 176, 65 L.Ed. 349, 16 A.L.R. 196: "The accepted definition of a conspiracy is a combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means."
This concept of a conspiracy, so far as this case is concerned, has been qualified by certain statutes.
The Clayton Act, 15 U.S.C.A. § 17, provides that a labor organization, or the members thereof, shall not be held or construed to be an illegal combination or conspiracy in restraint of trade, under the antitrust laws.
The Norris-LaGuardia Act, 29 U.S.C.A. § 105, prohibits any Court from issuing an injunction upon the ground that any person or persons participating in a labor dispute are engaged in an unlawful combination or conspiracy, because of the doing of certain acts.
In order to charge the defendants with the commission of a crime under the Sherman Act, the indictment must not only allege sufficient facts to show a conspiracy to cause a direct restraint upon interstate commerce, as distinguished from a remote or incidental restraint (Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Levering & Garrigues Company v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062), but must also show that defendants' activities were unlawful, outside the scope of the legitimate objects and means that may be sought and employed by labor unions under the sanction of the Clayton Act. Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L. R. 196.
Allegations in the indictment concerning the activities of defendants in picketing the premises of Anheuser-Busch, Inc., and Gaylord Container Corporation, as well as the refusal to allow their members to be employed by Borsari Tank Corporation and L. O. Stocker Company, fail to allege a conspiracy to directly restrain interstate commerce; the restraint on commerce shown by such allegations is only incidental. Levering & Garrigues Company v. Morrin, supra; United Leather Workers v. Herkert & Meisel, 265 U.S. 457, 44 S.Ct. 623, 68 L.Ed. 1104, 33 A.L.R. 566; Industrial Association v. United States, 268 U.S. 64, 45 S.Ct. 403, 69 L.Ed. 849; United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; Leader v. Apex Hosiery Company, 3 Cir., 1939, 108 F.2d 71.
The real purpose of the defendants, as disclosed by the indictment, was not to restrain commerce, but to prevail in a local labor controversy. The Congress has not declared that a dispute of the nature alleged is unlawful. By the indictment it is sought to punish the defendants for what is conceived to be an unwarranted interference with a local industry, under the pretense that by the dispute interstate commerce was restrained. As the Supreme Court has said in Levering & Garrigues Company v. Morrin, supra, 289 U.S. loc. cit. 107, 53 S.Ct. loc. cit. 551, 77 L.Ed. 1062: "Accepting the allegations of the bill at their full value, it results that the sole aim of the conspiracy was to halt or suppress local building operations as a means of compelling the employment of union labor, not for the purpose of affecting the sale or transit of materials in interstate commerce. Use of the materials was purely a local matter, and the suppression thereof the result of the pursuit of a purely local aim. Restraint of interstate commerce was not an object of the conspiracy. Prevention of the local use was in no sense a means adopted to effect such a restraint. It is this exclusively local aim, and not the fortuitous and incidental effect upon interstate commerce, which gives character to the conspiracy."
Allegations pertaining to the publication throughout the country of notices in which a boycott of Anheuser-Busch beer was requested, however, set forth an attempt to interfere with the interstate commerce in that product. It therefore becomes necessary to determine whether defendants employed any unlawful means or attempted an unlawful purpose in their latter activities.
The means used by defendants are not shown to be unlawful. Publication of notices that Anheuser-Busch was unfair to organized labor and requests to withdraw patronage from the products of that company was a direct boycott, lawfully carried *603 out. No secondary boycott of customers purchasing the company's products is disclosed.
The Government contends, however, that the purpose behind defendants' acts was unlawful; and that a "jurisdictional strike" cannot be justified, however lawful the means. Counsel for the Government concede that jurisdictional strikes are permitted in some states, although a few states have outlawed them, generally by legislation.
Whatever rule may be adopted in the various states, labor unions engaging in jurisdictional strikes are immune from suit in the federal courts, so long as lawful means are employed, under the provisions of the Norris-LaGuardia Act of 1932, 29 U.S.C.A. § 101 et seq., enlarging the scope of section 20 of the Clayton Act, 29 U.S.C.A. § 52, New Negro Alliance v. Sanitary Grocery Company, 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012; Lauf v. E. G. Schinner & Company, 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; Blankenship v. Kurfman, 7 Cir., 1938, 96 F.2d 450; Terrio v. S. N. Nielsen Construction Company, D. C.La., 1939, 30 F.Supp. 77.
That the jurisdictional strike in the present case grows out of a "labor dispute" within the meaning of the Norris-LaGuardia Act, is shown by Section 13 of the Act (29 U.S.C.A. § 113). In New Negro Alliance v. Sanitary Grocery Company, supra, the Act was held to cover a dispute between an organization interested in procuring employment for members of its race, and an employer. As in the case under consideration, defendants' attempt was to require one class of persons to be employed in place of the class then employed. The Supreme Court found that the purpose of the Norris-LaGuardia Act is to legalize and sanction the use of peaceful persuasion in "labor disputes" within the terms of the Act, 303 U.S. loc. cit. 562, 58 S.Ct. loc. cit. 707, 82 L.Ed. 1012: "The legislative history of the act demonstrates that it was the purpose of the Congress further to extend the prohibitions of the Clayton Act respecting the exercise of jurisdiction by federal courts and to obviate the results of the judicial construction of that act [referring to the Duplex case, supra, among others]. It was intended that peaceful and orderly dissemination of information by those defined as persons interested in a labor dispute concerning `terms and conditions of employment' in an industry or a plant or a place of business should be lawful; that, short of fraud, breach of the peace, violence, or conduct otherwise unlawful, those having a direct or indirect interest in such terms and conditions of employment should be at liberty to advertise and disseminate facts and information with respect to terms and conditions of employment, and peacefully to persuade others to concur in their views respecting an employer's practices." (Emphasis supplied).
In Duplex Printing Press Company v. Deering, supra, the Supreme Court had held that Section 20 of the Clayton Act was intended to place certain restrictions upon the general operation of the anti-trust laws, as well as to restrict the right to injunctions. At that time the section was interpreted to apply only to disputes involving employers, employees and persons seeking employment, and immunity was not extended to labor organizations or individuals not parties to the dispute. By the passage of the Norris-LaGuardia Act, such restriction in the scope of the Clayton Act is no longer in force (New Negro Alliance v. Sanitary Grocery Company, supra), and protection is now extended to persons and organizations not immediate parties to the dispute.
The Court in the Duplex case stated at page 471 of 254 U.S., 41 S.Ct. at page 178, 65 L.Ed. 349, 16 A.L.R. 196: "Section 20 must be given full effect according to its terms as an expression of the purpose of Congress; but it must be borne in mind that the section imposes an exceptional and extraordinary restriction upon the equity powers of the courts of the United States and upon the general operation of the antitrust laws, a restriction in the nature of a special privilege or immunity to a particular class, with corresponding detriment to the general public * * *." (Emphasis supplied).
The decision of the District Court for the District of Columbia on March 26, 1940, in United States v. Drivers, Chauffeurs & Helpers Local Union No. 639, etc., 32 F. Supp. 594, cannot be regarded as a precedent in this case. That action was under another section of the Sherman Act, the question of interstate commerce was not involved, and the indictment alleged the use by defendants of threats, force and violence, all of which are unlawful acts.
This is alleged to be a criminal case. The indictment should set forth facts which if proved would constitute a crime. That *604 this indictment does not do. The tendency of legislation has been to countenance conduct such as that set out in the indictment, by providing that it does not give rise to even a civil action. This policy of the law inheres in all the relations between employer and employee. That which does not amount to a civil wrong can hardly be characterized as criminal.
The separate demurrers are sustained.