LEVERING & GARRIGUES CO. ET AL. *v.* MORRIN ET AL.

No. 423.   Argued February 17, 1933.—Decided April 10, 1933

*Mr. Merritt Lane* for petitioners.

*Mr. Frank P. Walsh* for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit brought by petitioners against respondents in the federal district court for the southern district of New York to enjoin respondents from combining or conspiring to compel petitioners to employ, in their work of fabricating and erecting structural iron and steel, only members of a labor union, and to refrain from employing non-members; from conducting, inducing, or advising a boycott of petitioners; and from other enumerated acts. The bill invoked the jurisdiction of the federal court upon the ground of diversity of citizenship, and also upon the ground that acts complained of unlawfully interfered with interstate commerce and constituted a violation of the federal anti-trust acts. The case was sent to a referee, who, after a hearing, made a report and decision sustaining the charge of boycotting, but holding that the interference occasioned thereby was local in character and did not constitute an interference with interstate commerce. The report and decision were confirmed by the district court, and the bill dismissed as to certain of the respondents, and an injunction issued against others, the particulars of which, in the view we take of the case, it is not necessary to state.

The circuit court of appeals reversed the decree of the district court, holding that the allegations of the bill were insufficient to establish jurisdiction on the ground of diversity of citizenship, and that the case having failed on the federal question, the court was without power to consider the nonfederal question because it was asserted in an independent cause of action. While resting its decision upon these considerations, that court expressed the further view that the allegations of the bill in respect of the claim of federal jurisdiction under the anti-trust acts were probably so unsubstantial as to disclose, on the face

of the bill, a lack of federal jurisdiction. The district court was directed to dismiss the bill without prejudice for lack of jurisdiction unless amendments could be made to correct the defect in respect of diversity of citizenship. 61 F. (2d) 115. This court granted certiorari limited to the question of federal jurisdiction other than questions relating to diversity of citizenship.

The question of jurisdiction as thus limited is to be determined by the allegations of the bill, and not upon the facts as they may turn out, or by a decision of the merits. *Mosher* v. *Phoenix*, 287 U.S. 29, 30, and cases cited. Whether an objection that a bill or a complaint fails to state a case under a federal statute raises a question of jurisdiction or of merits is to be determined by the application of a well settled rule. If the bill or the complaint sets forth a substantial claim, a case is presented within the federal jurisdiction, however the court, upon consideration, may decide as to the legal sufficiency of the facts alleged to support the claim. But jurisdiction, as distinguished from merits, is wanting where the claim set forth in the pleading is plainly unsubstantial. The cases have stated the rule in a variety of ways, but all to that effect. See for example, *Mosher* v. *Phoenix*, *supra; Hull* v. *Burr*, 234 U.S. 712, 720; *Western Union Tel. Co.* v. *Ann Arbor R. Co.*, 178 U.S. 239, 244; *Binderup* v. *Pathe Exchange*, 263 U.S. 291, 305, *et seq.; South Covington & C. St. Ry. Co.* v. *Newport*, 259 U.S. 97, 99; *Niles-Bement-Pond Co.* v. *Iron Moulders Union*, 254 U.S. 77, 82; *Montana Catholic Missions* v. *Missoula County*, 200 U.S. 118, 130; *Newburyport Water Co.* v. *Newburyport*, 193 U.S. 561, 576. And the federal question averred may be plainly unsubstantial either because obviously without merit, or " because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of con-

troversy." *Hannis Distilling Co.* v. *Baltimore,* 216 U.S. 285, 288; *McGilvra* v. *Ross,* 215 U.S. 70, 76–77, 80; *Norton* v. *Whiteside,* 239 U.S. 144, 153; *Bianchi* v. *Morales,* 262 U.S. 170; *Kansas* v. *Bradley,* 26 Fed. 289, 290; *Harris* v. *Rosenberger,* 145 Fed. 449, 452.

Passing, without inquiry, the first of these tests, a consideration of the decisions of this court rendered prior to the filing of the present bill demonstrates that the question is concluded by an application of the second test.

The prayer for relief primarily is based upon the averments that petitioners are engaged in fabricating and erecting structural iron and steel; that they are, and have been for a long time, operating in such business on the open shop method in relation to their employment of labor; that they have large contracts for the construction of work in the City of New York; that respondents are organizations of labor and officers and agents thereof; that by means and in ways which are set forth, respondents have conspired, and are attempting, to compel petitioners and others to employ, exclusively, union labor in their building operations; that in pursuance of the conspiracy respondents have called out on strike petitioners'. union employees, and conducted boycotts, and undertaken other injurious interferences particularly set forth in the bill. These allegations conclude with the statement: " The sole purpose of the activities of the said defendants [respondents] is to compel a putting into effect the closed union shop in the industry of erecting structural iron and steel and inasmuch as this branch of the building industry is the only branch of the building industry where a person not a member of the labor union can secure employment if successful the entire building industry in the entire Metropolitan District will be closed union."

Following these allegations the bill contains averments to the effect that all the steel used by petitioners in the City of New York is transported from other states, being

either bought or fabricated by petitioners in other states and transported to New York to be erected by petitioners therein; that the purpose and intent of respondents is to prevent the use of said steel therein, and wherever erected by petitioners; that the effect of the success of respondents would be, among other things, to destroy the interstate traffic of petitioners in steel. All this, however, is no more than to say that respondents' interference with the erection of the steel in New York will have the effect of interfering with the bringing of the steel from other states. Accepting the allegations of the bill at their full value, it results that the sole aim of the conspiracy was to halt or suppress local building operations as a means of compelling the employment of union labor, not for the purpose of affecting the sale or transit of materials in interstate commerce. *Use* of the materials was purely a local matter, and the suppression thereof the result of the pursuit of a purely local aim. Restraint of interstate commerce was not an object of the conspiracy. Prevention of the local use was in no sense a means adopted to effect such a restraint. It is this exclusively local aim, and not the fortuitous and incidental effect upon interstate commerce, which gives character to the conspiracy. Compare *Bedford Cut Stone Co.* v. *Stone Cutters Assn.*, 274 U.S. 37, 46–47; *Anderson* v. *Shipowners Assn.*, 272 U.S. 359, 363–364. If thereby the shipment of steel in interstate commerce was curtailed, that result was incidental, indirect and remote, and, therefore, not within the anti-trust acts, as this court, prior to the filing of the present bill, had already held. *United Mine Workers* v. *Coronado Coal Co.*, 259 U.S. 344, 410–411; *United Leather Workers* v. *Herkert & Meisel Trunk Co.*, 265 U.S. 457. The controlling application of these cases to the present one is apparent from the review of them in the later case of the *Industrial Assn.* v. *United States*, 268 U.S. 64, 77–78, 80–82.

That case involved a combination on the part of building contractors and others to establish the "open shop" plan of employing labor by requiring builders who desired materials of certain kinds to obtain permits from a builders exchange, and by refusing such permits to those who did not support the plan. We held that any resulting interference with the free movement of materials from other states, due to the lack of demand therefor upon the part of builders who were excluded from purchasing such materials by reason of their refusal to support the plan, was incidental, indirect and remote, and, therefore, not an unlawful interference with interstate commerce. After pointing out that the question was thus determined by applying the *Coronado* and *United Leather Workers* cases, we said:

"The alleged conspiracy and the acts here complained of, spent their intended and direct force upon a local situation,—for building is as essentially local as mining, manufacturing or growing crops,—and if, by a resulting diminution of the commercial demand, interstate trade was curtailed either generally or in specific instances, that was a fortuitous consequence so remote and indirect as plainly to cause it to fall outside the reach of the Sherman Act."

The pertinent facts of that case and those here alleged are substantially the same, and subject to the same rule. It follows that the federal district court was without jurisdiction because the federal question presented was plainly unsubstantial, since it had, prior to the filing of the bill, been foreclosed by the two previous decisions last named, and was no longer the subject of controversy. See also *Browning* v. *Waycross*, 233 U.S. 16, 22–23; *General Railway Signal Co.* v. *Virginia*, 246 U.S. 500, 509–510. The decree must be affirmed for this reason and it becomes unnecessary to consider the other ground discussed by the court below and upon which its decision primarily was predicated.

*Decree affirmed.*