## UNITED STATES v. NEEDLE TRADES WORKERS' INDUSTRIAL UNION et al.

District Court, S. D. New York.
Feb. 8, 1935.

Martin Conboy, U. S. Atty., of New York City (John Harlan Amen and Albert J. Law, Sp. Assts. to Atty. Gen.), for the United States.

Louis B. Boudin, of New York City, for defendants.

PATTERSON, District Judge.

The indictment charges the defendants with violation of the Sherman Anti-Trust Act (15 USCA § 1 et seq.). Its sufficiency is questioned by demurrer.

The allegations of the indictment, briefly summarized, are that raw skins are sent from various states to dealers in New York; that the dealers in New York then send the skins to dressers in New York and in New Jersey, who treat the skins and return them to the dealers; that the dealers then sell them to manufacturers in the various states; that there is thus a continuous flow of shipments from various states to New York, from New York to New Jersey, from New Jersey back to New York, and thence to other states. It is charged that the Needle Trades Workers' Industrial Union, a labor organization with a fur department located in New York, and various officers and agents, have entered into a conspiracy intended to restrain the trade and commerce in skins among the several states; that the objects and effects of the conspiracy, among others, are to prevent dressers not employing union members from dressing skins, and to prevent dealers from shipping skins to any such dressers; that the means resort-

ed to for carrying out the conspiracy include the hiring of thugs to threaten and assault dealers and dressers, the forcible detention of vehicles carrying skins to dealers and dressers, the destruction of skins in transit, the use of explosives in the factories of dealers and dressers, and other violent and unlawful measures directed against dealers and dressers alike.

■ By the Sherman Anti-Trust Act § 1 (15 USCA § 1), every conspiracy in restraint of trade or commerce among the several states is declared illegal, and every person engaging in any such conspiracy is guilty of a misdemeanor. It is not questioned that a combination to obstruct interstate commerce either for an unlawful end or by unlawful means is a criminal combination under the anti-trust laws. Nor can it be questioned that a combination that resorts to the measures of violence and intimidation alleged in the indictment is an illegal combination. The point urged by the defendants is that the conspiracy charged in this indictment is not one in restraint of interstate trade or commerce; that on the contrary it is purely local both in purpose and effect.

■ The Supreme Court has laid down and applied the rule that in trade disputes a conspiracy is not under the ban of the Sherman Anti-Trust Act unless the purpose is to obstruct interstate commerce or unless the effect, direct, immediate, and substantial, is to bring about such obstruction. In the case of a local strike, therefore, where the object of the employees is to achieve better wages or shorter hours, and the means adopted are to cause cessation of manufacturing or production, even by unlawful measures, there is no violation of the Sherman Anti-Trust Act. It does not matter that one of the results of the stoppage of manufacture or production may be, and generally is, a reduction in the interstate movement of raw materials to the manufacturer and likewise in the interstate movement of the finished products from the manufacturer to his customers. That is no more than an indirect, incidental, and remote effect. United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762; United Leather Workers v. Herkert, 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566; Levering & Garrigues Co. v. Morrin, 289 U. S. 103, 53 S. Ct. 549, 77 L. Ed. 1062. See, also, Indus-

trial Association v. United States, 268 U. S. 64, 45 S. Ct. 403, 69 L. Ed. 849. But where the direct intent of those unlawfully preventing manufacture is to restrain or control the supply moving in interstate commerce, as sometimes happens, their action is a violation of the Sherman Anti-Trust Act. Coronado Coal Co. v. United Mine Workers, 268 U. S. 295, 45 S. Ct. 551, 69 L. Ed. 963. So, also, where the measures resorted to in the struggle include a secondary boycott or other pressure exerted on concerns in other states who buy the employer's products. In such instances there is said to be a direct frontal attack on the interstate trade in the article. Loewe v. Lawlor, 208 U. S. 274, 28 S. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; Duplex Printing Press Co. v. Deering, 354 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196; Bedford Cut Stone Co. v. Journeymen Stone Cutters' Ass'n, 274 U. S. 37, 47 S. Ct. 522, 71 L. Ed. 916, 54 A. L. R. 791. The present case is to be judged according to the foregoing principles.

■ Had the defendants confined themselves to measures against the dressers in New Jersey or New York, the situation would be like that in the first Coronado Case or the United Leather Workers Case. But the indictment charges them with more. It is alleged that, in order to carry out their purposes in respect to the dressers and as part of a conspiracy to break up interstate commerce in skins, they undertook to prevent the dressers' customers, the dealers in New York, from shipping skins to the dressers in New Jersey who were obnoxious to them, and in the course of their combination assaulted the dealers, with whom they had no immediate controversy, and destroyed property of the dealers. If these allegations are true, we have a case of a direct, substantial, and intentional interference with interstate commerce, which is the same as saying that there is a violation of the Sherman Anti-Trust Act.

■ A second point pressed by the defendants is that the movement of skins from New York to New Jersey is not interstate commerce. Significance is claimed for the fact that the skins were not sold, that they were sent to the dressers merely for processing, and remained the property of the dealers throughout. The point is without merit. Goods shipped from one state to another, to be improved or treated in the latter state and then returned, are in in-

terstate commerce as effectually as if there were a passage of title as an incident of transportation.

It is finally urged that the enactment of the National Industrial Recovery Act (48 Stat. 195) has changed the situation; that restraints of trade theretofore illegal have now been legalized. The court is not required to consider this point at large. The Sherman Anti-Trust Act was certainly not repealed when the National Industrial Recovery Act was passed. If a conspiracy of the kind alleged in this indictment has been approved in any of the codes adopted under the later act, my attention has not been called to it.

The demurrer will be overruled.