## HUNT et al. v. CRUMBOCH et al.
### No. 1011.

District Court, E. D. Pennsylvania.
Feb. 19, 1941.

Peter P. Zion, Hyman Maron, and Erwin Lodge, all of Philadelphia, Pa., for plaintiffs.

William A. Gray and Lester J. Schaffer, both of Philadelphia, Pa., for defendants.

GANEY, District Judge.

This matter concerns itself with a motion to dismiss the plaintiffs' bill of complaint on two grounds, (one) lack of jurisdiction over the subject matter and (two) failure to state a claim upon which relief can be granted. The two reasons, being closely inter-related, will be treated together. The complaint avers that the jurisdiction of the court is under the Sherman Act of July 2, 1890, 15 U.S.C.A. §§ 1–7, 15 note, and the Clayton Act of October 15, 1914, 38 Stat. 730, which entitles any person, firm or corporation to have injunctive relief against threatened loss or damage by violation of the so-called "Anti-Trust" laws of the United States, prohibiting, among other things, combinations and conspiracies in restraint of trade and commerce among the several States or with foreign commerce; that it was engaged under the trade name of Hunt's Motor Freight and Food Products Transport, with principal place of business in the City of Philadelphia; that it was engaged in the transportation of merchandise and foodstuffs for The Great Atlantic and Pacific Tea Company (hereinafter referred to as A. & P.) in solely interstate transportation, and had been so engaged by it for a period of fourteen years; that prior to February 4, 1939 the A. & P. entered into an agreement with the defendant Union whereby the A. & P. recognized the Union as the bargaining agent for its employees; that under instructions and by threats of the officers of the defendant Union, the said A. & P. notified the plaintiffs that it could no longer permit its merchandise to be loaded on the trucks of the plaintiffs for the purpose of carrying out the terms of the then existing contract which was to end on the 20th of March, 1939, unless they were members of the defendant Union; the employees of the plaintiff, composed of truck drivers and helpers, advised the plaintiffs that they were satisfied that the defendant Union act as their bargaining agent and the plaintiffs were at all times ready and willing to negotiate with the defendant Union as the representative and bargaining agent of its employees;

that the employees of the plaintiffs on several occasions, along with other groups of employees, whose employer was in the service of the A. & P., went to the headquarters of the defendant Union and applied for admission thereto, but while the other groups of employees were admitted into the Union, the employees of the plaintiffs were all denied admission to the Union on the sole ground that they were employees of the plaintiffs; that the A. & P. refused to offer any of its merchandise for loading and hauling after February 4, 1939 and the plaintiffs on March 10, 1939 received notice in writing that its contract was ended; that on or about November 6, 1939 plaintiffs entered into an agreement in writing with the Sterling Supply Corporation of Philadelphia, under which they were to carry merchandise in interstate commerce and they were likewise notified that the Sterling Supply Corporation could no longer offer its merchandise unless its truck drivers and helpers were members of the defendant Union and accordingly the contract with the Sterling Supply Corporation had to be abandoned; that the conduct of the Union, and members and officers thereof, was an unlawful conspiracy to interfere with and destroy the business of the plaintiffs in interstate commerce; that the said acts and actions of the defendant were done willfully and maliciously and with the intent and purpose to interfere with and control movements of merchandise in interstate commerce, to destroy the rights of the plaintiffs under existing contracts in interstate commerce, thereby depriving the plaintiffs of an opportunity to earn a livelihood in interstate commerce and destroy the value of their automotive equipment as well as the good will which they have created in interstate commerce for a period of more than fourteen years which amounted to $127,-000. Injunctive relief was asked to enjoin the Union from interfering with and obstructing the operation of the plaintiffs' trucks and vehicles, from interfering with the loading of merchandise upon motor vehicles of the plaintiffs engaged in interstate commerce, and from instructing members of the Union not to assist or permit the loading of merchandise upon motor trucks of the plaintiffs, and for damages suffered by the plaintiffs as a consequence of the defendants' acts.

In consideration of the questions here raised by the defendants' motion, we must first definitely limit the scope of our inquiry under the Sherman Act to the factual situation presented by the bill. To begin with, it has long been firmly established by many decisions of the Supreme Court that labor organizations are subject to the Act, when, pursuant to a conspiracy, they engage in unlawful activities which restrain or obstruct the free flow of interstate commerce. Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L. Ed. 488, 13 Ann.Cas. 815; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874; Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963; United States v. Brims, 272 U.S. 549, 47 S.Ct. 169, 71 L.Ed. 403; Apex Hosiery Company v. Leader et al., 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L. R. 1044. However, no labor dispute is here involved as defined in the Norris-LaGuardia Act of March 23, 1932, Sec. 13(c), 29 U.S.C.A. § 113(c): "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee". There is accordingly no purpose to be served in the consideration of those cases, which concern themselves with injunctive relief in labor disputes under the Clayton Act or the Norris-LaGuardia Act, the latest of which is United States v. Hutcheson et al., 312 U.S. 219, 61 S.Ct. 463, 85 L. Ed. 788, filed February 3, 1941. Here no term or condition of employment is in anywise concerned.

Therefore, since the Sherman Act brings within its scope labor organizations and since no labor dispute is here involved, there is presented the simple question of whether a substantial claim is presented, which would give the court jurisdiction. Levering & Garrigues Co. v. Morrin et al., 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062.

The averments of the plaintiffs' bill as hereinabove set forth, and more particularly that in paragraph 18, "These unlawful acts of the defendants were part of an unlawful conspiracy between and among them to interfere with the normal conduct of the business of the plaintiffs in

interstate commerce and to control movements of produce and merchandise that theretofore had been hauled and transported by the plaintiffs in interstate commerce", sufficiently set forth a substantial claim which gives the court jurisdiction of the subject matter of the bill. Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 241, 242, 20 S.Ct. 96, 44 L.Ed. 136. The standard or guide is as stated by the court in Mitchell Woodbury Corporation v. Albert Pick-Barth Co., 1 Cir., 41 F.2d 148, 150, "It is sufficient, unless objected to for lack of particularity, if it alleges with substantial certainty that a conspiracy existed, that its purpose was to deprive the plaintiff of its interstate business and thus destroy interstate competition; that there was restraint in interstate competition in consequence of the conspiracy, and that the plaintiff was thereby injured".

■ On many occasions, the court has said that not every restraint of trade affecting interstate commerce is within the prohibition of the Sherman Act, and this is so no matter how reprehensible the conduct of the defendants, nor how violent the methods used in affecting the restraint. United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762 (First Coronado case). The rule to be followed is that laid down in the Apex case, supra, which held that the restraints which come within the ambit of the Sherman Act, are those which the court relied upon to establish the violation in the Second Coronado case, Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963. In this case, the court at page 310 of 268 U.S., at page 556 of 45 S.Ct., held as follows: "The mere reduction in the supply of an article to be shipped in interstate commerce by the illegal or tortious prevention of its manufacture or production is ordinarily an indirect and remote obstruction to that commerce. But when the intent of those unlawfully preventing the manufacture or production is shown to be to restrain or control the supply entering and moving in interstate commerce, or the price of it in interstate markets, their action is a direct violation of the Anti-Trust Act [15 U.S.C.A. § 1 et seq.]". United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; United Leather Workers v. Herkert & Meisel Trunk Co., 265 U.S. 457, 44 S.Ct. 623, 68 L.Ed. 1104, 33 A.L.R. 566; Industrial Association v. United States, 268 U.S. 64, 45 S.Ct. 403, 69 L.Ed. 849. The averments of the bill show that the defendant Union here by its conduct with the A. & P. whereby it forced the A. & P. to refuse to permit the loading of its merchandise and foodstuffs by the complainant, coupled with its refusal to admit the plaintiffs' employees into the Union, although the plaintiff was willing and anxious that its employees so join, shows a very definite intent to restrain interstate commerce since its intention is "to restrain or control the supply entering and moving in interstate commerce" as is laid down in the Second Coronado Coal case, supra.

■ The amount of the trade restraint is likewise immaterial, although all of the plaintiffs' business was in interstate commerce. The restraint need not affect a reasonably great amount of trade, and it is therefore not the amount of merchandise or traffic affected, but rather the character and extent of the restriction itself. Steers et al. v. United States, 6 Cir., 192 F. 1; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 224, 60 S.Ct. 811, 84 L.Ed. 1129; National Labor Relations Board v. Fainblatt et al., 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; Apex Hosiery Co. v. Leader et al., supra.

■ Counsel in his brief and at oral argument earnestly contended that the defendants' conduct did not constitute a restraint. The result of the defendants' conduct was as is indicated, to eliminate his business with the A. & P. because his employees were not members of the Union, and then refuse to admit its employees into the Union when wishing to join, thereby destroying his business which was wholly interstate. The restraint here was in the destruction of the business as stated in Binderup v. Pathe Exchange, 263 U.S. 291, 312, 44 S.Ct. 96, 100, 68 L.Ed. 308: "It is difficult to imagine how interstate trade could be more effectively restrained than by suppressing it and that, in effect, so far as the exhibitor is concerned, is what the distributors in combination are charged with doing and intending to do".

■ Accordingly, while as we have indicated, the two grounds for the motion to dismiss are inter-related, lest there be any confusion between the jurisdiction of the court with reference to the subject matter and the failure to state a cause of action upon which relief could

be granted, it is here ruled that since jurisdiction is the power to decide a justiciable controversy and includes questions of law as well as of fact, that the bill sets forth a substantial claim under the Sherman Act, and so presents a case within the jurisdiction of the federal court; further, that there are sufficient averments in the bill, if proven, that a restraint existed, which is interdicted by the Sherman Act. Whether or not the acts complained of fall within or without the Sherman Anti-Trust Law, must wait upon proof as to what the facts and circumstances surrounding the alleged conspiracy complained of actually are; the allegations in the bill have not yet been denied or explained by the defendants, and for the purposes of the motion to dismiss, have been admitted, leaving the case in such a posture that the critical intent and purpose pursuant to which the acts of the defendants were done, cannot be determined. Consolidated Terminal Corp. v. Drivers, Chauffeurs and Helpers, Local Union 639 et al., D.C., 33 F.Supp. 645.

Motion to dismiss denied.