## ALBRECHT v. KINSELLA et al.

### No. 7558.

Circuit Court of Appeals, Seventh Circuit.

May 21, 1941.

L. E. Sutherland and James F. Bierly, both of Peoria, Ill., for appellant.

E. V. Champion, Willard B. Gaskins, F. J. Lee, and Victor P. Michel, all of Peoria, Ill., for appellees.

Before EVANS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

The trial court sustained defendants' motion to dismiss plaintiff's complaint, which attempted to state a case for treble damages under the Clayton Act. The damages arose out of an alleged conspiracy between a contractors' association and a labor union, to monopolize—to the exclusion of plaintiff—the contracting business in the City of

Peoria, Illinois, which exclusion affected interstate commerce by causing plaintiff to cease importing his materials from without the State of Illinois.

The two issues are: (1) Does the complaint allege a conspiracy within the Sherman and Clayton Acts? (2) Is a labor union liable for violation of the said Acts?

The plaintiff is a plastering contractor, a resident of Pekin, Illinois, and has an office in Peoria, Illinois.

The defendants are: (1) Local No. 12, which is a labor union of plasterers and cement finishers; (2) Jack Kinsella, who is business manager of Local No. 12, and other officials of said union; and (3) James Bell, et al., plastering contractors in Peoria, who formed a contractors association.

Plaintiff alleges that the contractors association and the union entered into an agreement that members of the Local Union would work only for such contractors who were members of the association (or recognized by it). Plaintiff was informed that if he did not become a member of the association he would be unable to do any jobs in Peoria. Under this threat, he sought to join the association, but was refused membership on the ground that he was not a resident of Peoria. He alleges that such refusal was arbitrary, and was really the result of the conspiracy to prevent him from working in Peoria, which conspiracy sought to monopolize the plastering work in that vicinity.

He alleges that Kinsella told him that if he would pay the contractors association ten per cent of the amount received by him he would be furnished labor. Plaintiff submitted bids gauged to include said extra ten per cent, but never succeeded in obtaining work, because the bid was too high. He also charges that during the years 1936–1938 he completed contracts aggregating $146,500 in value, but that in the year 1939, he was unable to negotiate any contract in that vicinity, and those contracts which he had begun had to be abandoned to others. As a result thereof, he purchased no materials from outside the state. In carrying out his contracts he had always purchased metal laths from a company in Iowa, and purchased lime from a local dealer, but said lime was manufactured outside the State of Illinois.

In August, 1939, plaintiff was performing a contract of plastering and lathing a school building in East Peoria, and had half completed the work. On the fourth of August, Kinsella "ordered all the men employed by the plaintiff on said jobs to cease work and thereafter refused to let plaintiff have workmen to complete said jobs. * * * The general contractor completed the jobs and plaintiff lost considerable profit he would otherwise have earned."

Passing first upon the applicability of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and Clayton Act, 38 Stat. 730, to labor unions, we conclude that the instant conspiracy, one party to which was a labor union, would fall within the condemnation of the Acts, if the other necessary factors were present.

Since the decision in the Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044, there is little doubt that the instances in which a labor union can run afoul the Act are few; nevertheless, they are not completely free from its ambit.

In the instant case, the union was seeking no such ordinary end as an increase in wages, decrease in hours, proper representations, etc. Taking the allegations of the complaint at their face value, the union and the contractors association were attempting to monopolize the plaster contracting business to increase the profits of the respective members. This was to be accomplished by stifling competition, through methods foul and unfair. It had the objectives—taking the allegations as verities—which the Sherman and Clayton Acts were directly aimed at punishing.

"The end sought [by the Acts] was the prevention of restraints to free competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services, all of which had come to be regarded as a special form of public injury." Apex case, supra, 310 U.S. page 493, 60 S.Ct. page 992, 84 L.Ed. 1311, 128 A.L.R. 1044.

Labor unions as such were here involved only in name—and the name of labor was being used as a shield or blind behind which a venal group was hiding and at the same time levying a tribute upon industry, business, and home builders.

When a corporation acts outside the scope of its authority, the result may be, and often is, the creation of an officers' or directors' liability. The owner of a valid patent has a legal monopoly of the product covered by the patent. If he steps outside

that monopoly, however, and joins with other patentees to stifle competition and extend and tighten the monopoly in said product, he is liable, in a civil suit, and he is also subject to a criminal prosecution. When officials of the labor union step outside their union labor fields and act as highway men, levying tribute on those who wish to build homes or other buildings, acting for their individual gain, the immunity granted to labor unions under the amendment to the Sherman Act does not extend to them. They are not acting as labor unions except in name. The test is whether the activity complained of is one promotive of, and within the scope of, the legitimate objects of a labor union or whether the union is being misused by those holding official position or positions of trust therein, who, conspiring for their private and their personal profit, are using the union name to obtain immunity from Sherman Act prosecutions and at the same time shield their misconduct behind an organization whose fair name and activities are likely to mislead a court or jury as well as the public.

Another issue, however, is fatal to plaintiff's right to recover. It may be stated thus,—Was the commerce which the conspiracies involved, such as is required by the Sherman and Clayton Acts? Stating it more narrowly, since we have determined that the objects of the conspiracy were within the contemplation of the Acts,—Is the interstate commerce involved in this conspiracy of that quality or character and so related to the object of the conspiracies as is necessary to invoke the Sherman and Clayton Acts and make them applicable?

█ Because the effect upon interstate commerce is remote and merely incidental and the object of the conspiracy was not directed against such interstate trade, but wholly against local trade, we must, under the decisions, hold that the case falls outside these Acts. Levering & G. Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044.

Further comment, or statement of our views, is unnecessary. We have not only a square holding by the majority of the court, which we must follow, to the effect that the interstate commerce such as is here involved, is insufficient to invoke the application of the Acts, but we have a dissenting opinion which helps to clarify the extent of the majority opinion holding. To express our sympathy with the views of the minority opinion would be supererogation. We bow to and follow the majority opinion and therefore hold that the interstate commerce here involved was insufficient to invoke the application of the Federal Acts in question.

The judgment is affirmed.