**DENVER UNION STOCK YARD CO. v. BROTHERHOOD OF RAILWAY & STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES et al.**

No. 497.

District Court, D. Colorado.

Nov. 30, 1942.

Pershing, Bosworth, Dick & Dawson and Robert G. Bosworth, all of Denver, Colo., for Denver Union Stock Yard Co.

Philip Hornbein, of Denver, Colo., and Frank L. Mulholland, Clarence M. Mulholland, and Willard H. McEwen, all of Toledo, Ohio, for defendants other than L. Metcalfe Walling.

Reid Williams, of Denver, Colo., for L. Metcalfe Walling.

SYMES, District Judge.

This case coming on for pre-trial conference, the court of its own motion raised the question of jurisdiction, and discussed it with counsel. Counsel for the Wage and Hour Division of the Department of Labor also raised the question. Briefs were filed and the court has gone into the matter thoroughly, and come to the conclusion a case of "actual controversy" under the Declaratory Judgment Act is not made; that the bill should be dismissed.

The Supreme Court has said, Ex parte Young, 209 U.S. 123, at page 143, 28 S.Ct. 441, at page 447, 52 L.Ed. 714, 13 L.R.A., N.S., 932, 14 Ann.Cas. 764: "'It is most true that this court will not take jurisdiction if it should not;'".

And in Levering & Garrigues Co. v. Morrin, 289 U.S. 103, at page 105, 53 S. Ct. 549, at page 550, 77 L.Ed. 1062: "But jurisdiction * * * is wanting where the claim set forth * * * is plainly unsubstantial."

The case made by the pleadings discloses an action by the Denver Union Stock Yard Company, a Colorado corporation, for a declaration of rights, or declaratory judgment under § 400, Tit. 28 U.S.C.A., § 274d of the Judicial Code, to resolve a conflict between the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., and the Railway Labor Act, 45 U.S.C.A. § 151 et seq.

The plaintiff—a Colorado corporation—according to the allegation of the bill, is a carrier subject to Part 1 of the Inter-

310

state Commerce Act, 49 U.S.C.A. § 1 et seq., and the defendants—the Brotherhood of Railway & Steamship Clerks, etc.—is a labor organization, the selected representative of substantially all of plaintiff's office and yard employees, who are made defendants individually. L. Metcalfe Walling, Wage and Hour Administrator of the U. S. Department of Labor, is named as a defendant, but is not yet a party.

The answer of the defendants, other than said L. Metcalfe Walling, admits plaintiff's allegations that it is a carrier subject to Part 1 of the Interstate Commerce Act, as defined in the Railroad Labor Act, engaged in the operation of equipment, facilities and the performing of services in connection with the transportation, delivery, elevation, transfer in transit, and handling of property transported by railroad. Admits the defendant Brotherhood is the duly and legally selected representative of all the employees of the plaintiff for the purpose of representing them in collective bargaining with the plaintiff concerning rates of pay rules and working conditions and all similar questions by virtue of their choice evidenced by a certificate of the National Mediation Board to that effect issued May 27, 1942 in case R-915 before said Board, and as such representatives of the employees of the defendants, negotiated and entered into the agreements with plaintiff referred to in paragraph 6 of the complaint. Defendants further admit the allegations in paragraphs 2, 3, 4, 5, 6 and 7 of the complaint.

The gist of plaintiff's grievance is there is a jurisdictional conflict between the Fair Labor Standards Act of 1938 and the Railway Labor Act. Plaintiff pleads the Interstate Commerce Commission in Ex parte 127, January 7, 1941, held the plaintiff to be a carrier subject to Part 1 of the Interstate Commerce Act and that the National Mediation Board has held the plaintiff Stock Yard Company to be a carrier subject to the Railway Labor Act, and after an election held May 27, 1942, the Mediation Board certified defendant Brotherhood as the representative of the plaintiff's employees for the purpose of collective bargaining. That thereafter in full conformity with the Railway Labor Act, and in reliance upon Ex parte 127, the plaintiff negotiated with the defendant Brotherhood, and on July 12, 1942, entered into contracts with it covering wage schedules and working conditions of its employees. Copies of these contracts are attached to the bill.

The bill recites the plaintiff Stock Yard Company, previous to the date of the contracts paid its employees a regular hourly rate of pay for all hours up to 40 hours in any work week, and one and one-half times that rate for all hours over 40 hours, according to the Wage and Hour Act. That the Brotherhood, prior and during negotiations (supra), informed the plaintiff its employees were not subject to § 7 of the Fair Labor Standards Act of 1938, or to the jurisdiction of the Wage and Hour Division, and for that reason the company, instead of negotiating contracts in accordance with the provisions of the Wage and Hour Division, entered into the contracts governing wage schedules and working conditions in accordance with the Railway Labor Act.

It is then alleged the Brotherhood and the Company were mistaken, and the employees covered by the agreement are within § 7 of the Fair Labor Standards Act of 1938; that a mutual mistake was made, and the contracts entered into (supra), should be cancelled and renegotiated if the employees are subject to the Fair Labor Standards Act. That the Brotherhood contends the decisions of the Interstate Commerce Commission and National Mediation Board have determined the company is under the Railway Labor Act, and their employees are not under § 7 of the Fair Labor Standards Act, or the jurisdiction of the Wage and Hour Division with respect to overtime. That the Wage and Hour Administrator, through his attorneys, had notified the plaintiff that substantially all its employees are under § 7 of the Fair Labor Standards Act.

That an actual controversy exists between the company and the defendants, and between some of the defendants and themselves whether or not the company's employees are subject to § 7 of the Fair Labor Standards Act. That the Brotherhood contends the employees are not under § 7 of the Fair Labor Standards Act, because they are under the jurisdiction of the National Mediation Board under the Railway Labor Act, and that plaintiff is subject to Part 1 of the Interstate Commerce Act. Plaintiff therefore claims a mutual mistake has been made if the company's employees are under § 7 of the Fair Labor Standards Act, and wishes to have the contract set aside on grounds.

of mutual mistake and renegotiated if such be the case.

That by reason of the conflicting claims between the company, the defendants and themselves, the plaintiff is insecure and uncertain in its contractual rights with its employees and the Brotherhood, and is liable for substantial damages for each work week, unless the rights of the parties are definitely declared. The court is therefore asked to declare whether the company is subject to § 7 of the Fair Labor Standards Act, and if so that the contract entered into with the Brotherhood and its employees should be set aside on the ground of mutual mistake, and renegotiated. Further, if the court should find the employees represented by the Brotherhood are not covered by § 7 of the Fair Labor Standards Act, that the Wage and Hour Administrator and Brotherhood and employees be restrained from instituting any action against the company for failure to comply with § 7 of the Fair Labor Standards Act.

It will be observed from the complaint the contracts entered into with the Brotherhood in reliance upon the decision of the Interstate Commerce Commission and the National Mediation Board have not in any way been attacked or questioned by defendant Brotherhood, or in any proceeding in any court, or before any board, and no order or ruling declaring the contract void, or in any way illegal or contrary to law has been made by the defendant L. Metcalfe Walling, Wage and Hour Administrator of the Department of Labor. The only statement in the complaint that squints at a possible controversy is that the company has been advised it and the Brotherhood were mistaken, and that its employees are within § 7 of the Fair Labor Standards Act. The court is not informed whether this advice was given by the plaintiff's attorneys, or by anyone claiming jurisdiction to raise or pass on such questions. Nor are we advised of any action taken that in any way challenges or questions the contract.

The defendant Brotherhood admits all the allegations of the bill, except that it is without knowledge whether the company has been advised of the alleged mistake, and specifically denies the Brotherhood and company were mistaken, and deny the employees covered by the agreements referred to are within § 7 of the Fair Labor Standards Act, and denies the contract between the company and its employees, acting through the Brotherhood, should for any reason be cancelled and renegotiated. It specifically alleged the contracts were made in accordance with the Railway Labor Act and are binding upon the parties until changed in accordance with said Act.

It admits the Wage and Hour Administrator, through his attorney, has notified the company that substantially all the employees are under § 7 of the Fair Labor Standards Act. The alleged notice is not set out, and there is nothing in the pleadings to show that the Wage and Hour Administrator has taken any action of any kind to enforce any conflicting provisions of the Wage and Hour Law, or to question, set aside or interfere with in any manner the contract in question.

Declaratory judgments under § 400, Tit. 28, supra, may be declared only "in cases of actual controversy". It is hard to see how any judgment of this court would amount to more than a legal opinion rendered at plaintiff's request.

At the pre-trial hearing the real situation was disclosed. Under the contracts in question the plaintiff's employees work six eight-hour days a week (see Rule 25 of the contract), before they are entitled to overtime, while under the Wage and Hour Act 40 hours a week constitutes a week's work.

Plaintiff says in entering upon the contract it now seeks to have set aside it relied upon the decision of the Interstate Commerce Commission. Ex parte 127, supra. If the plaintiff felt aggrieved or harmed by said decisions, it should have appealed therefrom or promptly taken proceedings to correct what it now claims were erroneous holdings of the Interstate Commerce Commission and the Mediation Board.

If plaintiff's employees are under the Wage and Hour Act they have a right of action for extra time for all hours they have worked over 40 per week. It is this threat of litigation that prompts this action. Apparently there may be a question of whether every employee of the Stock Yard—for instance stenographers and those working in the office—are strictly speaking railroad employees and subject to the Interstate Commerce Act, or are under the Wage and Hour Act. The Interstate Commerce Commission however so held and plaintiff made its election between

the two Acts when it made the contract, and there is no showing of any suit as yet by the employees or any order of a government bureau, etc., questioning the validity of the contract. Both parties to the agreement recognize and are carrying it out. Plaintiff's doubts as to the validity of the contract apparently are the result of fear of costly litigation in the event it is sometime determined its employees are under the jurisdiction of the Wage and Hour Division instead of the Interstate Commerce Commission. This situation existed, however, when the contract was signed.

■■ The leading case cited is Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000. It holds the Declaratory Judgment Act deals with controversies in the constitutional sense, and that the Act is procedural only; that a controversy in the sense of the Declaratory Judgment Act must be justiciable, definite and concrete, touching the legal relation of the parties having adverse legal interests, and must be a real and substantial controversy, etc. The facts in that case disclosed an actual controversy. The case further holds the word "actual" is one of emphasis rather than definition and 300 U.S. at page 240, 57 S.Ct. at page 464, 81 L.Ed. 617, 108 A.L.R. 1000:

"A 'controversy' in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." See, also, Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246.

■■ In Vol. 2 of the Permanent Edition of Words and Phrases, at p. 226, the term "actual controversy" is defined as follows: "Mere difference of opinion is not 'actual controversy' within Declaratory Judgment Act. * * * Disputed question of law or procedure raised in pending suit is not 'actual controversy'

within Declaratory Judgment Act." Citing cases.

And the following statement applicable to the case at bar is made: " 'Actual controversy' authorizing declaratory judgment appears if differences have reached stage of antagonistic claims, actively pressed on one side and opposed on other." Citing cases.

In Vol. 1 C.J.S., Actions, § 18, p. 1025, it is said: "As a general rule a proceeding for a declaratory judgment can be invoked, or such a judgment be rendered, only in a case in which there is an actual, or real existing controversy, or, as it has been termed, 'a justiciable controversy,' an actual controversy of a justiciable character, between parties having adverse interests in the matter; or, as has been held, there must be at least the ripening seeds of such a controversy, that is, a state of facts indicating threatened litigation, in the immediate future, which seems unavoidable, concerning the respective legal rights of the parties."

In the case at bar defendant does not question the validity of the contract, and both are carrying on in good faith.

Plaintiff's fears, apparently, are grounded largely upon an opinion of the local attorney for the defendant L. Metcalfe Walling, Wage and Hour Administrator for the Department of Labor. This is not set out. The said Walling, however, is not a party to this action, and any judgment rendered herein would not be binding on him in the enforcement of the Wage and Hour Act.

■ Apparently the Federal rule as to what is an actual controversy under these declaratory judgment statutes is stricter than the rule that obtains in the highest courts of many states. However, they are not binding on the Federal courts in construing an Act of Congress.

Paragraph 2 of the prayer of the complaint is; that the contract entered into between the plaintiff and the Brotherhood and the employees named, should be set aside on the ground of mutual mistake and renegotiated, which the plaintiff offers to do.

■ While the question is not strictly before the court, the thought occurs that a contract cannot be set aside for mutual mistake of law. A mistake which will void a contract must be one of fact. A mistake of law will not affect its enforce-

ability, nor afford grounds for reformation or cancellation of the instrument. Bowles v. Miller, 96 Colo. 145, 40 P.2d 243; Restatement of the Law, Contracts, Vol. 2, § 502; Holbrook v. Tomlinson, 304 Ill. 579, 137 N.E. 745; 17 C.J.S., Contracts, § 145, p. 500, § 145.[1]

It follows the action should be, and is, dismissed.

---

[1] See, also, Brillhart v. Excess Insurance Co., 316 U.S. 491, at page 494, 62 S.Ct. 1173, 86 L.Ed. 1620.