The **ESSEX COUNTY WELFARE BOARD**, a body corporate and politic of the State of New Jersey, Philip K. Lazaro, Josephine Woods, and Edna Greenleaf, Petitioners,

v.

The Honorable Wilbur J. **COHEN**, Secretary, United States Department of Health, Education and Welfare, Respondent.

Civ. No. 957-68.

United States District Court
D. New Jersey.

March 19, 1969.

William H. Sheil, Maplewood, N. J., for petitioners.

David M. Satz, Jr., U. S. Atty., by Elliot Scher, Asst. U. S. Atty., Newark, N. J., for respondent.

Rita L. Bender, Newark, N. J., for the Community Legal Action Workshop of the Roger Baldwin Foundation of the American Civil Liberties Union of New Jersey, amicus curiae.

Before VAN DUSEN, Circuit Judge, and COOLAHAN and WHIPPLE, District Judges.

## OPINION

WHIPPLE, District Judge:

The petitioners in this action are: (1) The Essex County Welfare Board (Board), established to carry out all forms of assistance programs, more specifically the plan of Aid to Families With Dependent Children (AFDC), in the County of Essex, State of New Jersey; (2) Philip K. Lazaro, Director, Essex County Welfare Board, as a "citizen and taxpayer;" (3) Josephine Woods and Edna Greenleaf, presently receiving assistance through the Board for themselves and their children (each has four) under the AFDC program based upon the continued absences from home of a parent. The respondent is Wilbur J.

Cohen, Secretary of the United States Department of Health, Education and Welfare (HEW) as of the date of the institution of this action; he is vested by federal law with implementing the federal assistance programs, more particularly the AFDC plan.

The American Civil Liberties Union of New Jersey was granted leave to file an appearance in support of the petitioners' claim. None of the parties objected.

The legislation attacked in this complaint had its birth on December 15, 1967, when the Congress adopted certain amendments to Title IV of the Social Security Act,[1] which amendments became Pub.L. 90–248 (81 Stat. 821). Section 208(b) of Pub.L. 90–248 provides as follows:

"(b) Section 403 of such Act [Social Security Act of 1935, as amended] is further amended by adding at the end thereof the following new subsection:

'(d) Notwithstanding any other provision of this Act, the average monthly number of dependent children under the age of 18 who have been deprived of parental support or care by reason of the continued absence from the home of a parent with respect to whom payments under this section may be made to a State for any calendar quarter after June 30, 1968, shall not exceed the number which bears the same ratio to the total population of such State under the age of 18 on the first day of the year in which such quarter falls as the average monthly number of such dependent children under the age of 18 with respect to whom payments under this section were made to such State for the calendar quarter beginning January 1, 1968, bore to the total population of such State under the age of 18 on that date.' "

The effective date of the amendment was changed to June 28, 1968 by Pub.L. 90–364 (42 U.S.C.A. § 603(d) (1)).

The gravamen of the complaint is that the effect of the above provision amend-

---

1. 49 Stat. 620, as amended 42 U.S.C. §§ 301–1394.

ing the Social Security Act is to provide generally for federal financial participation for children in New Jersey and other states who are eligible for AFDC assistance by reason of the deprivation of parental support due to the death, the continued absence from the home, or the physical or mental incapacity of a parent, while at the same time excluding some children of this same class from being counted in the total federal financial support to the state of the children's residence solely on the basis of the time their applications for assistance are filed. This cutoff, in itself, the petitioners allege, is discriminatory and unreasonable against needy children because it makes a further distinction, by operating if and when these children claim eligibility on the ground of continued absence from the home of a parent, whereas it has no effect on the claims of children which are based upon death or incapacity of a parent. The legislation is commonly known as the "AFDC freeze."

Petitioners assert that the AFDC freeze is unconstitutional for the following reasons: 1) it is violative of due process; 2) it constitutes a denial of the equal protection of the laws; 3) the freeze is an unconstitutional bill of attainder; 4) the freeze violates the limitations imposed on the federal spending power by Article 1, Section 8 of the Constitution; 5) the freeze will unconstitutionally impede the right of citizens to freedom of interstate travel.

The petitioners pray that this court declare Section 208(b) of Pub.L. 90–248 unconstitutional and void under the Fifth, Ninth, Tenth and Fourteenth Amendments to the United States Constitution, that the court issue a preliminary and permanent injunction restraining and preventing the respondent from implementing Section 208(b) of Pub.L. 90–248 in his administration of Title IV

of the Social Security Act, and restraining and preventing respondent from requiring the various states to implement Section 208(b) of Pub.L. 90–248 in their state-level administration of AFDC plans as a condition of continued federal financial participation therein.

The petitioners also sought the convention of a statutory court of three judges. The issue is moot, a three-judge court having been convened by order of the Chief Judge of this Circuit, pursuant to 28 U.S.C. § 2284.

■ The respondent moves to dismiss the complaint on several grounds. One ground urged by the respondent is that the three-judge court should dissolve itself and remit the case to a single District Court Judge. We disagree. The pleadings clearly demonstrate the existence of substantial questions of constitutionality. Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148 (1932); Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L. Ed. 1062 (1933); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

■ The respondent also contends that the petitioners do not have standing to maintain this action. The petitioner first named in the action is the Essex County Welfare Board. The Board possesses status to sue and be sued,[2] and has supervision of relief and the settlement of the poor.[3] The respondent argues that, pursuant to 42 U.S.C. § 602(a)(3),[4] the New Jersey Department of Institutions and Agencies, and not the Essex County Welfare Board, is the designated State agency for the formulation of policies implementing the Social Security Act at the State level and, as such, is the only State agency with the requisite interest in the AFDC program to maintain

2. N.J.S. 44:4–20, N.J.S.A.

3. N.J.S. 44:4–24, N.J.S.A.

4. Title 42 U.S.C. § 602(a)(3) states: A state plan for aid and services to needy families with children must "either provide for the establishment or designation of a single state agency to administer the plan, or provide for the establishment or designation of a single State agency to supervise the administration of the plan."

this action. It is unquestionable, however, that the Welfare Board at the County level is the conduit for the disbursement of federal funds, and certainly does not enjoy a merely passive existence in this area.

In Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) Mr. Justice Brennan propounded this question: "Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?" Although *Baker,* supra, was a reapportionment controversy, and perhaps distinguishable on that basis from the present case, the analogy is present and the answer to Justice Brennan's question is yes, if for no other reason than the Board has an interest in the funds it will be required to expend, and in the communities which will be the recipients of those funds. What petitioner could more "sharply present" the issues, e. g., the deprivation of the equal protection of the laws to a certain group of people by the AFDC freeze, for the court's "illumination" and determination than the Board? Furthermore, the Supreme Court has long recognized certain litigants as having "standing only as representatives of the public interest." See Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229 (1942). See also Pierce v. Society of the Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 458–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The Board is seeking relief for the benefit of welfare recipients and, as such, has standing.

That petitioners Woods and Greenleaf have standing is beyond question. Each is the mother of four children and each is presently receiving aid from the Board under the AFDC program. Each certainly has a personal stake in the outcome of the litigation. Presumably, their interests being reasonably direct and definite, they come within the purview of Baker v. Carr where the court's definition of standing stressed the "personal" and "concretely adverse" interests of the plaintiffs in the outcome of the controversy.[5]

To find that Philip Lazaro, Director of the Board, suing as a taxpayer, has standing is more difficult. The complaint does not state whether Mr. Lazaro acts as a federal or as a state taxpayer; his standing in each capacity will be examined.

While Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed. 947 (1968) has liberalized the standing requirement for federal taxpayers,[6] the court still considers it necessary, in ruling on standing, to look to the substantive issues "to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated."[7] Suing as a federal taxpayer Lazaro cannot satisfy the nexus requirement without alleging an unconstitutional congressional expenditure. Instead, he attacks a congressional enactment that, when effective, would restrict and delimit federal expenditures. Since he can claim no injury to his pocketbook by the statute, and there is no judicially cognizable right of a federal taxpayer to force Congress to add to his tax burden and undertake additional expenditures, Lazaro has no standing as a federal taxpayer.

While it is conceivable that the AFDC freeze will result in an increase in the state taxes Mr. Lazaro must pay, it is perfectly obvious that pecuniary loss is not the real interest of Mr. Lazaro in this litigation. The grounds on which he attacks the statute do not relate to his status as a taxpayer, but it is as a tax-

5. See 369 U.S. at 204, 82 S.Ct. at 703.

6. Compare Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), which barred suits by federal

taxpayers to enjoin allegedly unconstitutional federal expenditures.

7. See 392 U.S. at 102, 88 S.Ct. at 1953.

payer that he seeks standing. As a state taxpayer he does not have that "personal stake in the outcome of the controversy [sufficient] to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." [8] The other petitioners are far more germane to the controversy; Lazaro, suing as a state taxpayer, does not have standing.

On the issue of prematurity, the court cannot overlook the action of Congress in delaying the effect of the freeze by Pub.L. 90–364. See 1968 U.S.Code Cong. and Admin.News, pp. 2361–2362, 2395–2396, 2408–2409. Both the Report of the Senate Committee (pp. 2361–2362) and the explanatory statement by Senator Smathers (ranking majority member of the Senate Committee on Finance) made on March 25, 1968 (pp. 2408–2409; 114 Cong.Rec. § 3272),[9] pointed out that the Department of Health, Education and Welfare had in 1967, prior to the enactment of Pub.L. 90–248, presented estimates that the freeze "would not reduce Federal participation in assistance payments because of the effect of the work incentive provisions of the amendments, in reducing the number of people on the rolls," and that "[t]he Department has

subsequently revised these estimates, and the President's budget states that assistance payments to about 475,000 AFDC recipients will not receive Federal matching funds totaling $125 million in fiscal year 1969. It is unlikely that the conference committee would have acted as it did if the members had been aware of the effects now predicted by the Department of Health, Education and Welfare," 1968 U.S.Code Cong. and Admin.News, p. 2361. This language also appears at pp. 2361–62 of the above-cited volume of the U.S.Code Cong. and Admin.News:

"At the same time, there have been other developments which will have a major impact on the AFDC limitations as it applies to some States. Court decisions in a number of States, including Connecticut, Delaware, the District of Columbia, Wisconsin, and Pennsylvania, have forced those States to eliminate eligibility requirements based on length of residence. A court decision in Alabama, and litigation in process in Louisiana, would not permit those States to declare families ineligible for assistance because of the presence of a man in the house who is not married to the mother of the family.

"Some 40 States now have requirements based on length of residence; 18

**8.** Flast v. Cohen, supra, at 99, 88 S.Ct. at 1952 quoting Baker v. Carr, supra, 369 U.S. at 204, 82 S.Ct. 691.

**9.** This statement included the following language:

"Last year the House placed a provision in the social security bill limiting Federal participation in aid to families with dependent children. In the Senate, we felt this limitation was unnecessary because of the constructive features we included in the new work incentive program. Nevertheless, the conference kept the limitation virtually as it had been in the House bill.

"One of the reasons the conference acted as it did was that the Department of Health, Education and Welfare predicted that with the quick implementation of the work incentive program, there would be no reduction in Federal participation in assistance payments.

"The Department has now revised their predictions. They now estimate that about 475,000 AFDC recipients in fiscal year 1969 will be assisted entirely from State and local funds because of the AFDC limitation—a loss to the States of $125 million in Federal funds.

"Mr. President, I believe that the conference committee—and I was a member of that conference committee, as was the distinguished Senator from Delaware [Mr. Williams]—would have acted differently if the Department had presented these estimates at that time. None of the members of the conference committee suspected or intended that the AFDC limitation would have an impact of the magnitude which it is now indicated it would have, if left to stand.

"Other new factors have also come into play which will have a major effect on AFDC caseloads in some States * * *."

States have man-in-the-house rules. The Department of Health, Education and Welfare estimates that in the United States as a whole, a range of from 200,000 to 400,000 AFDC recipients might be added to the rolls if all States eliminated the man-in-the-house rule; another 100,000 to 200,000 AFDC recipients could be added to the rolls with the elimination of duration-of-residence related requirements.

"If court decisions prohibit these requirements, the unforeseen new recipients will place an additional burden on the States affected. For the most part, there will be no Federal financial participation on their behalf under present law since they will exceed the number of recipients in the first calendar quarter of 1968, the period used in calculating the proportion of the child population affected by the Federal limitation.

"For these reasons, the committee again recommends that the limitation on Federal participation be deleted."

A decision by the Supreme Court which has heard argument in the cases where federal district court decisions have eliminated eligibility requirements based on length of residence appears imminent (Shapiro v. Thompson, Washington v. Legrant, Reynolds v. Smith, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600). It seems possible, if not probable, that the present Congress will wish to review the applicable date of the freeze in the light of the expected Supreme Court decision [10] and the current estimates of the HEW Department on the financial effects of the freeze.

On February 25th, 1969 Senator Clifford Case introduced a bill in the Senate to eliminate the freeze (S. 1103, 91st Cong., 1st Sess.). His statement on the Senate floor coinciding with the introduction of the bill is illuminating.[11]

10. Copies of this opinion will be sent to the appropriate Congressional committees (i.e., Senate Committee on Finance and House Ways and Means Committee) for their information.

11. "Mr. President, I introduce for appropriate reference a bill to eliminate the provisions of the 1967 Social Security Amendments limiting Federal financial participation in the Aid to Families with Dependent Children (AFDC) program.

"The limitation, or 'freeze,' on Federal participation in the AFDC program was incorporated, at the insistence of the House of Representatives, in the Social Security amendments approved by the Congress in 1967. Under the 'freeze' provision, the number of children under age 18 who are eligible for AFDC because of a parent's 'absence from home' in any state could not exceed for Federal matching purposes the proportion of AFDC children to all children in the state as of January 1968.

"In 1967 and again last year the Senate voted to eliminate this provision. I was glad to co-sponsor legislation last year to repeal the freeze and am happy to note that both Governor Hughes of New Jersey and Governor Rockefeller of New York have joined in a cooperative effort to urge the Congress to remove this provision.

"Originally scheduled to become effective July 1, 1968, the freeze was postponed during the last session of Congress for one year to July 1, 1969. Unless the Congress acts again to postpone the effective date of the amendment, or to repeal it outright, as I believe should be done, many states will be forced to assume an even greater share of welfare costs next July than they do now.

"While I appreciate the concern of the House over the rapidly increasing welfare rolls, surely we cannot leave the states in their present situation. Should the Congress fail to act, a state which has experienced a disproportionate increase in the number of needy children compared to the total number of children will face two alternatives.

"It may reduce payments to all recipients so that State spending would remain approximately the same, or it may assume the total costs for all needy children who, under the freeze, no longer will be eligible for Federal assistance. The first alternative is unthinkable; the second is unfair to the states.

"Since, under the law, states must provide assistance to all eligible recipients, limiting the Federal Government's participation in the AFDC program at this time will not help reduce welfare rolls. It simply shifts to already overburdened state and local governments the responsi-

The allegations of the complaint [12] preclude the court from holding that the plaintiffs will not be able to show immediate and irreparable damage as a result of the freeze. However, both because of the possibility of congressional action affecting the effective date of the "freeze" and the desirability of securing current information on the possible effect of this freeze after June 30, 1969, a hearing will be scheduled on May 28, 1969, with the understanding that counsel shall meet no later than April 15, 1969 and prepare a stipulation of as many facts as possible, which stipulation should be filed at least a week before the above-mentioned hearing date.

Though perhaps repetitious, to sum up, we hold that:

1. The application to dissolve the three-judge court is denied.

2. The petitioners, with the exception of Philip K. Lazaro, have standing.

3. The respondent's motion to dismiss the complaint is denied at this time, without prejudice to renew the motion at a later date in conformity with this Opinion.

4. The petitioners' motion for injunctive relief is continued without prejudice to renew same after a hearing.

An appropriate order in conformity with the foregoing should be submitted, consented to, or settled, on notice.

COOLAHAN, District Judge (concurring):

I concur in the opinion of the majority that a further hearing should be held on May 28, 1969, but believe that pending that hearing decision should be reserved on the Government's motion to dismiss.

---

bility for assuming a larger share of the costs of caring for the nation's poor.

"Welfare is a national problem whose causes and effects are not confined to state and local boundaries. Certainly, much needs to be done, both in the immediate future and for the long-range, to improve the whole welfare system.

"A number of thoughtful proposals have been offered and some experimental studies are underway. The results of these studies should be helpful in arriving at effective and efficient long-range solutions.

"In the meantime, it is essential that the AFDC freeze be removed."

12. See paragraphs IV(3), IV(5), IV(6), IV(7), IV(9). We cannot hold that evidence which may be produced under this complaint could not require a holding that the effect of the freeze constitutes a denial of constitutional guarantees, particularly the denial of due process of law. Cf. Aptheker v. Secretary of State, 378 U.S. 500, 510, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964).