**FLORIDA EAST COAST RAILWAY COMPANY, Appellant,**

v.

**JACKSONVILLE TERMINAL COM-PANY et al., Appellees.**

**No. 20977.**

United States Court of Appeals
Fifth Circuit.

March 4, 1964.

Rehearing Denied March 31, 1964.

Chester Bedell, C. Harris Dittmar, Robert P. Smith, Jr., Jacksonville, Fla., for appellant; John B. L'Engle, St. Augustine, Fla., Bedell, Bedell & Dittmar, Jacksonville, Fla., of counsel.

Louis Kurz, Elliot Adams, Raymond Ehrlich, John S. Cox, Yardley Drake Buckman, Jacksonville, Fla., for appellees; Kurz, Toole, Maness & Martin, Cox, Grissett, MacLean & Webb, McCarthy, Adams & Foote, Jacksonville, Fla., of counsel.

Before TUTTLE, Chief Judge, and JONES and BELL, Circuit Judges.

TUTTLE, Chief Judge.

This litigation between two sets of railroad companies, over the management of the jointly owned Jacksonville Termi-

nal Company, was dismissed by the trial court for want of federal court jurisdiction.

The present posture of the case can best be understood by our adopting the statement of the case as contained in appellant's brief, which is accepted as correct by each of the three appellees— a circumstance which we think it appropriate to say speaks well for the fairness and objectivity of counsel for appellant and equally well for the spirit of fairness and willingness to cooperate of counsel for the appellees. The result is that the court's task is made measurably simpler by being permitted to turn at once to the legal question. That question is: Did the trial court have jurisdiction of the subject matter of plaintiff's suit?

The following statement of the case has been agreed upon:

Alleging in its complaint that its action arises under the Interstate Commerce Act and thus within the jurisdiction of a federal court, Florida East Coast Railway Company prayed for injunctive relief and a money decree against Jacksonville Terminal Company, owner and operator of Jacksonville's railroad terminal facilities, and against Atlantic Coast Line Railroad Company and Seaboard Airline Railroad Company, who with Southern Railway Company, Georgia Southern and Florida Railway Company and plaintiff jointly own Jacksonville Terminal Company and jointly control its affairs under an Operating and Guaranty Agreement between the parties dated December 1, 1947.

The Operating and Guaranty Agreement is alleged and is shown to provide in part:

" * * * that the President or General Manager [of Terminal Company], or any other officer subject to election by the Board of Directors of the Terminal Company shall be appointed and serve only by unanimous consent of the Guarantor Companies and shall (any provision of the by-laws of the Terminal Company to the contrary notwithstand-

ing) be dismissed upon the written request of any one of the Railway Companies, and * * * the dismissal of any subordinate official of the Terminal Company shall be made by the President or the General Manager upon the written request of any one of the Railway Companies."

Plaintiff charges by its complaint that on February 8, 1963, plaintiff made an appropriate written request, pursuant to Article Twenty-first of the Agreement, for the immediate dismissal of M. C. Jennette as President and General Manager and of Elliot Adams as General Counsel of defendant Terminal Company and that, by reason of the Agreement, by reason of the Interstate Commerce Commission's order authorizing and approving the Agreement and the transaction reflected thereby, and by reason of Title 49 U.S.C. § 5, it became and was the duty of each defendant (a) to honor and enforce plaintiff's request and (b) not to enter into any transaction to acquire or maintain the power to control, directly or indirectly, Terminal Company's organization or operation and not to participate in accomplishing control of Terminal Company's organization in a common interest with any other defendant in any manner whatsoever, except in accordance with the Operating and Guaranty Agreement or otherwise with the prior approval and authorization of the Interstate Commerce Commission.

Plaintiff's claim for relief is that the defendants Terminal Company, Coast Line and Seaboard have refused to honor plaintiff's said request and have frustrated plaintiff's right effectively to object to the continued service of the two Terminal Company officials. Plaintiff alleges in terms that Terminal Company, Coast Line and Seaboard have thereby ousted plaintiff from its right to maintain jointly with the other owners the power to control the Terminal Company's organization and operation and that those defendants have acquired that power for themselves, in violation of (a) the Operating and Guaranty Agreement, which was created under the aegis of federal

law to govern the affairs of Terminal Company in a way consistent with the law; and (b) the Interstate Commerce Act, which makes unlawful [Title 49 U. S.C. § 5(4)] the acquisition of such power without the approval and authorization of the Interstate Commerce Commission.

On motions by the defendants Terminal Company, Coast Line and Seaboard, the district court dismissed the complaint and plaintiff's action for lack of jurisdiction.

■ The parties are not in substantial disagreement over the test of federal jurisdiction where it is asserted under the Federal Question Section—28 U.S.C.A. § 1331—or under the Commerce and Anti-Trust Section—28 U.S.C.A. § 1337—of the jurisdiction statutes. As we stated in Dickson v. Edwards, 5 Cir., 293 F.2d 211 (a federal question suit):

> "The test is the familiar one that it must appear from the complaint that the construction of a federal statute will have an adverse effect on the right of recovery if the statute is construed one rather than another way."

Here, the plaintiff alleged that it had entered a contract wth certain other carriers touching on the control and management of the Terminal Company, also, within the purview of the federal statutes, a carrier. This contract would have been illegal but for the order of the Interstate Commerce Commission approving it. This follows from the provisions of Title 49 U.S.C.A. § 5(4) quoted above which make it illegal for any carrier to participate in accomplishing or effectuating the control or management in a common interest of any two or more carriers, however, attained except as provided under Title 49 U.S.C.A. § 5(2) which permits this to be done "with the approval and authorization of the Commission."

Thus, the appellant says that the need for this Commission-approved contract to be construed brings it within the purview of § 1337 as a proceeding "arising under

an * * * Act of Congress regulating commerce." Appellant cites for this proposition the recent decision of the Supreme Court in International Association of Machinists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 which, in a somewhat different context, but still speaking of a contract authorized by a federal statute, said: "It is federal law which would determine whether a § 204 contract is valid and enforceable according to its terms. If these contracts are to serve this function under § 204, their validity, interpretation, and enforceability cannot be left to the laws of the many States, for it would be fatal to the goals of the Act if a contractual provision contrary to the federal command were nevertheless enforced under state law or if a contract were struck down though in furtherance of the federal scheme."

■ We think this reasoning is apposite here. A specific contract of joint ownership of the Terminal was approved by the Interstate Commerce Commission. It contained express provisions dealing with management personnel. The complaint specifically alleges a breach of this contract by appellees touching upon management personnel. The defendants (although this is not to be considered in passing upon jurisdiction) say, in effect, that they cannot perform the contract literally as written because of peculiarities of Florida state law.

We think the contract which was authorized by federal statute and made legal only because of the federal statute may be construed by the federal court upon application of the plaintiff.

■ Moreover, there is more than a merely colorable contention by appellant that the conduct of the appellees violates the terms of the statute itself, in that the "freezing" of management contrary to the Interstate Commerce Commission-approved plan, amounts to entering into a transaction to accomplish or effectuate the control or management of the Terminal Company in a manner different from that authorized by Title 49 U.S.C.A. §

5(2). This being the issue raised by the complaint, the plaintiff is entitled to have the question determined by a federal court. Even though the trial court may decide contrary to appellant's contention as to the theory of recovery, the complaint presents the issue and makes the contention. It thus asserts federal jurisdiction.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.