428 F.2d 1375
 SPRINGFIELD TELEVISION, INC., a Missouri Corporation,
Independent Broadcasting Company, Inc., a Missouri
Corporation, and Springfield (Mo)-CATV, Inc., a Missouri
Corporation, Arch A. Watson, John O. Cooper, Keith G. Wells,
G. Pearson Ward and Ralph Stufflebaum, Suing for Themselves
and All Other Persons Similarly Situated, Appellants,
v.
The CITY OF SPRINGFIELD, MISSOURI, a Municipal Corporation,
David R. Burkhalter, City Manager of the City of
Springfield, E. L. Anderson, Lucille Upton, David James,
James F. Payne, Lauren Nance, Gus Wickman, Carl Stillwell,
Joe Bill Turner and Clyde H. Martin, Members of and
Constituting the Council of the City of Springfield,
Missouri, Carl Stillwell, Mayor of Springfield, Missouri,
and International Telemeter of Springfield Corp., a Missouri
Corporation, Appellees.
 No. 19909.
 United States Court of Appeals, Eighth Circuit.
 June 23, 1970.
 
 Richard Farrington, of Farrington, Curtis & Strong, Springfield, Mo., for appellants; John K. Hulston, Springfield, Mo., and Mayte Boylan Hardie, Springfield, Mo., were on the brief with Mr. Farrington.
 Joseph E. Stevens, Jr., of Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for appellees; F. B. Freeman, of Neale, Newman, Bradshaw & Freeman, Springfield, Mo., was on the brief with Mr. Stevens (attorneys for International Telemeter of Springfield Corp.). Don G. Busch, Springfield, Mo., filed brief for appellee City of Springfield.
 Before MATTHES, MEHAFFY and LAY, Circuit Judges.
 MATTHES, Circuit Judge.
 
 
 1
 This appeal is from the order of the United States District Court for the Western District of Missouri dismissing appellants' complaint for lack of jurisdiction over the subject matter. We hold that the district court possessed jurisdiction and accordingly reverse for further proceedings.
 
 
 2
 The salient facts in this controversy are set forth in appellants' complaint. For the purpose of the motion to dismiss, we are obliged to regard as admitted all well-pleaded facts contained therein. McCleneghan v. Union Stock Yards Co. of Omaha, 298 F.2d 659, 662 (8th Cir. 1962); Creswell-Keith, Inc. v. Willingham, 264 F.2d 76, 81 (8th Cir. 1959).
 
 
 3
 The complaint shows that the appellants are three Missouri corporations and five individual taxpayers residing in the City of Springfield, Missouri. Two of the corporations, Springfield Television Inc., and Independent Broadcasting Company, Inc., each own and operate separate television stations located in Springfield and are duly licensed by the Federal Communications Commission (hereafter FCC). The third corporation, Springfield (Mo)-CATV, Inc., is authorized by its corporate charter to operate a community antenna television (CATV) system.[1] Its principal place of business is in Springfield, and the stock of the corporation is owned in equal amounts by the other two corporate appellants. The appellees are the City of Springfield, its city manager, the members of the Council of the City of Springfield, and International Telemeter of Springfield Corp., a Missouri corporation, with its principal place of business in Kansas City, Missouri.
 
 
 4
 On July 1, 1968, the City Council of Springfield adopted Resolution No. 4932 (Council Bill No. 7426) which established procedures for the submission of competitive bids for a CATV franchise to be granted by the City. The Resolution provided that the franchise award would be made to the bidder offering the highest percentage of gross annual receipts to be paid to the City, in addition to a lump sum of $100,000 payable upon acceptance of the bid. Appellant Springfield (Mo)-CATV, Inc., did not submit a proposal for the franchise, but has alleged in its complaint that it 'intends to bid for any community antenna television system franchise in said city legally available to prospective bidders.' On August 12, the City Council, by adoption of Resolution No. 4962 (Council Bill No. 7509), found the bid of appellee International Telemeter to be the highest submitted. Accordingly, on August 26, the Council adopted Special Ordinance No. 15121, granting the CATV system franchise to International Telemeter and setting forth in detail the terms and conditions accompanying the grant. International Telemeter accepted the franchise in writing.
 
 
 5
 On August 29, 1968, this suit was filed. The gravamen of the complaint is that the two Council Resolutions and Special Ordinance No. 15121 are invalid as repugnant to the Constitution of the United States in certain specified particulars, as violative of the Missouri constitution and laws, and as exceeding the authority granted under the Charter of the City of Springfield. All of the appellants alleged that they would be irreparably injured as taxpayers of the City of Springfield if the City were to relinquish to appellee International Telemeter any interest in its streets, alleys, and public ways for construction of a CATV system under an invalid ordinance. Appellants Springfield Television, Inc., and Independent Broadcasting Company, Inc., alleged that their rights under their licenses from the FCC, under the Federal Communications Act of 1934, and under the coverage and nonduplication requirements established by 21.172, 74.1033, 74.1103, 74.1109, and 91.559 of the FCC's Second Report and Order in Dockets 14895, 15233, and 15971, FCC Order 66-220, issued on March 8, 1966, would be illegally damaged and/or destroyed by the franchise grant. Appellant Springfield (Mo)-CATV, Inc., alleged that it was deprived of its right to compete fairly for a legal franchise.
 
 
 6
 The complaint averred that the district court had jurisdiction of the proceeding by virtue of 28 U.S.C. 1331(a) and 1337, Rule 56(b, c), Fed.R.Civ.P., Communications Act of 1934, 47 U.S.C. 151 et seq., various provisions of the FCC's Second Report and Order, issued March 8, 1966, and FCC Order 68-658, June 25, 1968, and certain sections of the United States Constitution. Appellants prayed for a permanent injunction, enjoining all appellees from taking any action to implement the two Council resolutions and Special Ordinance No. 15121 or any agreement or contract with respect to any CATV franchise granted by such legislation, and for such further relief as may be found just, lawful, and equitable.
 
 
 7
 Appellees International Telemeter and the City of Springfield filed separate motions to dismiss the complaint on the ground that (1) the complaint failed to state a claim upon which relief could be granted, (2) the complaint failed to allege sufficient jurisdictional facts to give the court jurisdiction of the subject matter and over the parties, (3) appellants did not have legal capacity or standing to bring the alleged causes of action, and (4) appellants improperly joined a multitude of local questions with alleged Federal questions. In a memorandum opinion filed July 2, 1968, not reported, the district court granted the motions and dismissed the complaint, finding a lack of subject-matter jurisdiction under either 28 U.S.C. 1331(a) or 1337 for the reason that neither the FCC nor Congress has preempted the field of regulating CATV to the exclusion of state and local governments. We limit our inquiry to 1337.
 
 
 8
 Section 1337 provides: 'The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce. * * *' Under this statute, no minimum amount in controversy is required to invoke Federal jurisdiction. Peyton v. Railway Express Agency, Inc., 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); Bloomfield Steamship Co. v. Sabine Pilots Ass'n, 262 F.2d 345, 346 (5th Cir. 1959), petition for cert. dismissed, 368 U.S. 802, 82 S.Ct. 20, 7 L.Ed.2d 15 (1961). However, the basis for Federal jurisdiction under 1337 must appear from well-pleaded facts in the complaint, standing alone and unaided. Peyton v. Railway Express Agency, Inc., supra 316 U.S. at 353, 62 S.Ct. 1171; Eickof Construction Co. v. Great Northern Railway Co., 291 F.Supp. 44, 47 (D.Minn.1968). Paragraph 10 of appellants' complaint, upon which the 1337 jurisdictional claim rests, reads in its entirety as follows:
 
 
 9
 '10. Resolutions No. 4932 and 4962 and Ordinance No. 15121 hereinabove set forth, are unconstitutional and repugnant on their face to the Constitution and laws of the United States for the reasons that Sections 5, 8, 20, 22, 23, 39, 40, 41, 42 and 43 of Ordinance No. 15121 attempt to regulate an area of interstate communication which has been preempted by the Communications Act of 1934, 48 Stat. 1064, 47 U.S.C.A., Section 151 et seq.; Federal Communication Commission's Second Report and Order in Dockets 14895, 15233 and 15971, FCC 66-220 issued on March 8, 1966, and FCC Order 68-658, Docket 17333 issued on June 25, 1968; by virtue of which the regulation of the entire field of television, including community antenna television systems, has been preempted by the United States.'
 
 
 10
 The jurisdictional inquiry must focus on whether this case arises under an Act of Congress regulating commerce. The phrase 'arising under' is not a simple and precise guide. Certainly, interpretation of the virtually identical language in 28 U.S.C. 1331(a), governing general Federal question jurisdiction, is persuasive. See Eickof Construction Co. v. Great Northern Railway Co., supra at 46; Florida East Coast Railway Co. v. Jacksonville Terminal Co., 328 F.2d 720, 722 (5th Cir.), cert. denied, 379 U.S. 830, 85 S.Ct. 59, 13 L.Ed.2d 38 (1964) (implicit); 1 Moore's Federal Practice P0.60(8.-3), at 627 (2d ed. 1964). However, the critical phrase in 1331(a) has similarly generated no clear and precise standard by which Federal courts can separate the wheat from the chaff in terms of properly cognizable Federal questions. 'Though the meaning of this phrase has attracted the interest of such giants of the bench as Marshall, Waite, Bradley, the first Harlan, Holmes, Cardozo, and Frankfurter, and has been the subject of voluminous scholarly writing, it cannot be said that any clear test has yet been developed to determine which cases 'arise under' the Constitution, laws, or treaties of the United States.' C. Wright, Handbook of the Law of Federal Courts 17, at 54-55 (2d ed. 1970).
 
 
 11
 Careful analysis of decisions which we regard as analagous in principle persuades us to conclude that this case 'arises under' an act of Congress regulating commerce.[2] E.g., American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946). See also Chrysler Corp. v. Malloy, 294 F.Supp. 524, 527 (D.Vt.1968), rev'd on other grounds sub nom. Chrysler Corp. v. Tofany, 419 F.2d 499 (2d Cir. 1969). Plaintiffs in Watson were various national and local labor organizations operating in Florida, individual employee members of those organizations, and three employers. Their action was grounded on an alleged conflict between a Florida constitutional amendment outlawing closed shop agreements and the National Labor Relations Act. Their complaint alleged that the plaintiffs had or were about to become parties to closed shop agreements with Florida employers and prayed that the Florida Attorney General and other state officials be enjoined from instituting any civil or criminal proceedings against plaintiffs in conformity with the state law. The 3-judge district court held that it had jurisdiction under the predecessor statutes to 28 U.S.C. 1331(a) and 1343(3). On direct appeal to the Supreme Court, that Court stated, 327 U.S. at 591, 66 S.Ct. at 765:
 
 
 12
 'We do not pass on the question whether the District Court had jurisdiction under 24(1) or 24(14) of the Judicial Code (presently 1331(a) and 1343(3), respectively). For it is the view of a majority of the Court that jurisdiction is found in 24(8) of the Judicial Code, 28 U.S.C. 41(8) (presently 1337), which grants the federal district courts jurisdiction of all 'suits and proceedings arising under any law regulating commerce.' As we have said, the bill alleges a conflict between the Florida law and the National Labor Relations Act. The theory of the bill is that labor unions, certified as collective bargaining representatives of employees under that Act, are granted as a matter of federal law the right to use the closed-shop agreement or, alternatively, that the right of collective bargaining granted by that Act includes the right to bargain collectively for a closed-shop. Whether that claim is correct is a question which goes to the merits. It is, however, a substantial one. And since the right asserted is derived from or recognized by a federal law regulating commerce, a majority of the Court conclude that a suit to protect it against impairment by state action is a suit 'arising under' a federal law 'regulating commerce." (footnote omitted)
 
 
 13
 Concluding that a particular case arises under an act of Congress regulating commerce does not, however, end the inquiry into Federal jurisdiction. Where, as here, the complaint alleges claims arising under both Federal and state law, at least one Federal claim must be substantial in order to confer jurisdiction on the district court. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). See Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105-106, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); Stanturf v. Sipes, 335 F.2d 224, 228-229 (8th Cir. 1964). The test to be employed is usually stated in the negative:
 
 
 14
 'But jurisdiction, as distinguished from merits, is wanting where the claim set forth in the pleading is plainly unsubstantial. * * * And the federal question averred may be plainly unsubstantial either because obviously without merit, or 'because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482; * * *.'
 
 
 15
 Levering & Garrigues Co. v. Morrin, supra 289 U.S. at 105-106, 53 S.Ct. at 550. We hold that paragraph 10 of appellants' complaint asserts a claim amounting to a substantial Federal question.
 
 
 16
 The heart of appellants' claim in paragraph 10 is that certain enumerated sections of Ordinance No. 15121 attempt to regulate an area of interstate communication preempted by the Communication Act of 1934 and certain specified FCC regulations. Although in the concluding portion of the paragraph, appellants aver that the entire field of CATV regulation has been preempted by Congress and the FCC, they retreated from this position, both in their briefs and at oral argument in this court. That retreat conforms to the present state of the law as indicated by the Supreme Court's recent per curiam affirmance of a 3-judge district court decision involving the Nevada Community Antenna Television System Law. TV Pix, Inc. v. Taylor, 396 U.S. 556, 90 S.Ct. 749, 24 L.Ed.2d 746 (1970), aff'g 304 F.Supp. 459 (D.Nev.1968). The district court in TV Pix, Inc. held that where the FCC promulgates specific regulations of CATV systems, it has to that extent fully occupied the field, but where the FCC is silent, there is no compelling national interest in uniformity which would prohibit state and local regulation, even as to matters held to be within the power of the FCC to regulate by the Supreme Court's landmark holding of United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 1968).[3] 304 F.Supp. at 465. See also Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963).
 
 
 17
 Having retreated substantially from their all-or-nothing claim, appellants focus now upon specific provisions of the Ordinance as relating to and conflicting with specific regulations promulgated by the FCC. This claim remains unresolved by the district court. It is not a frivolous or spurious one, and it is not at all inconsistent with the holding of TV Pix, Inc. and Head. Indeed, appellees themselves concede that some provisions of the ordinance, i.e., 22 and 23, do conflict with FCC regulations regarding nonduplication of programs carried by local stations and nonimportation of distant signals. Appellants have, of course, alleged still further conflicts between the Federal regulations and the Springfield Ordinance. The effect of the admitted conflicts is also in dispute. These and other remaining questions are substantial ones, better suited for resolution in the district court where the Ordinance might in the first instance be dissected with a critical eye and a determination made as to which provisions are preempted, which are not, and what consequence that analysis has upon the Ordinance as a whole. We intimate no opinion on the merits of these questions.
 
 
 18
 Judge Collinson expressed some reservations on the standing of the individual taxpayers-appellants to sue as members of a class. The parties have devoted portions of their briefs to this point. We believe, as the district court apparently did, that the three corporate appellants alleged sufficient facts in the complaint so as to provide standing for their presence in the action. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). However, in the absence of a definitive ruling by the court below, we decline the invitation to dispose of the standing challenge, particularly in the face of the very meager record before us. Our declination is without prejudice to appellees to raise anew the standing question on remand.
 
 
 19
 The district court has jurisdiction to explore fully appellants' preemption claim and, because of that, to consider also the other allegations of deprivation of rights protected by the United States Constitution. As to the remaining claims arising under the Missouri constitution and laws and the Charter of the City of Springfield, the district court should be guided on remand by the principles expressed in United Mine Workers of America v. Gibbs, supra, 721-729, 86 S.Ct. 1130, concerning Federal pendent jurisdiction of state claims.
 
 
 20
 By way of addendum we take occasion to direct the district court's attention to the well-settled principle that a complaint should not be dismissed for failure to state a claim for relief unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Great Atlantic & Pacific Tea Company, Inc. v. Amalgamated Meatcutters and Butcher Workmen of North America, Local Union No. 88, AFL-CIO, 410 F.2d 650, 652 (8th Cir. 1969).
 
 
 21
 The order of dismissal is vacated and the cause is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 A CATV system is defined by the FCC as 'any facility which, in whole or in part, receives directly or indirectly over the air and amplifies or otherwise modifies the signals transmitting programs broadcast by one or more television stations and distributes such signals by wire or cable to subscribing members of the public who pay for such service * * *.' 47 C.F.R. 74.1101(a). For an excellent and up-to-date compendium on CATV see Barnett Cable Television and Media Concentration, Part I: Control of Cable Systems by Local Broadcasters, 22 Stan.L.Rev. 221, 224-50 (1970). See also Botein, The FCC's Proposed CATV Regulations, 55 Cornell L.Rev. 244 (1970); Note, The Wire Mire: The FCC and CATV, 79 Harv.L.Rev. 366 (1965)
 
 
 [2]
 A very scholarly critique of Supreme Court decisions in the Federal question field was made by London, 'Federal Question' Jurisdiction-- A Snare and a Delusion, 57 Mich.L.Rev. 835 (1959)
 
 
 [3]
 While citing and relying upon Southwestern Cable Co., the district court erroneously assumed that its jurisdiction had to be exclusive before it could entertain the suit. The court must have confused the exclusive preemption claim with exclusive Federal jurisdiction for we take it as settled that jurisdiction of Federal courts under 28 U.S.C. 1337 is not exclusive of courts of the several states, as is true, for example, in admiralty jurisdiction, 1333, bankruptcy jurisdiction, 1334, and patent and copyright jurisdiction, 1338(a). E.g., Johnson v. Butler Bros., 162 F.2d 87, 88 (8th Cir. 1947)