MENDENHALL ENTERPRISES, INC., a Delaware Corporation, Plaintiff-Appellant,

v.

Louis C. CURRIER, Herbert N. Grayson, Jo/Kel, Inc., a Nebraska Corporation, Does I through X, inclusive, Defendants-Appellees.

No. 76–3363.

United States Court of Appeals, Ninth Circuit.

Nov. 14, 1977.

As Amended Dec. 16, 1977.

Frank R. Gasdia (argued), Downey, Cal., for plaintiff-appellant.

Ann M. Pougiales (argued), of Loughran, Berol & Hegarty, San Francisco, Cal., for defendants-appellees.

Before WRIGHT and WALLACE, Circuit Judges, and GRANT, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

This is an appeal from a judgment for defendants in a contract action governed by California law. Prior to oral argument, this court ordered counsel to direct their arguments to the question whether there is federal jurisdiction over this suit, a question not raised by the parties in any of the briefs, by the court below, or by a panel of this court on an earlier appeal.

This suit is on a contract between private parties and only private rights are affected. Mendenhall Enterprises, Inc. [Mendenhall] contractually agreed to purchase all of the outstanding stock of Jo/Kel, Inc. [Jo/Kel]. Because Jo/Kel was a "contract carrier," the sale of its stock was subject to approval by the Interstate Commerce Commission. Section 4 of the contract required Menden-

* Senior District Judge, Northern District of Indiana.

hall to follow one of several alternative courses of action within thirty days of a contemplated denial of approval by the ICC. Specifically, Mendenhall could have consummated, renegotiated or rescinded the contract, or it could have challenged the Commission's denial before a three-judge federal court.

As expected, the ICC entered an order denying the petition for approval of the sale. Applicants filed several petitions for review, all of which the ICC responded to with orders of denial. After the last order of denial, Mendenhall filed a complaint before a three-judge federal court, seeking review of the Commission's action.

Later Jo/Kel advised Mendenhall that it considered Mendenhall to be in breach of the contract because of its failure to act under Section 4. Mendenhall responded that the provisions of Section 4 had not been triggered by the Commission's initial order of denial because it was not an "administratively final order" within the meaning contemplated by the parties, and that the appeal to the three-judge court had been initiated within thirty days of the Commission's last order. Mendenhall thereafter brought this action for declaratory relief, asking the state court to declare that it was not in breach of the contract. On removal, the district court assumed jurisdiction pursuant to 28 U.S.C. § 1331 (1970) because "the construction of the contract . . . is necessarily dependent upon the construction of section 17 of the Interstate Commerce Act and the Rules of Practice promulgated thereunder."

The dispute focuses on which ICC order was the "administratively final order" that triggered the provisions of Section 4 of the contract.

The briefs for both sides correctly identify the issue as the meaning of "a final administrative order of the Interstate Commerce Commission *as used in Section 4 of the contract which is the subject of this case."* [1] The trial court also correctly recognized the issue as focusing on "*the parties intent and understanding* as to the meaning of the term 'administratively final order of the ICC' *as used in that section [of the contract]."* [2] Yet the parties and the court below agreed that the suit arose under a law of the United States, allowing jurisdiction under 28 U.S.C. § 1331 (1970).

Appellees argue that the Supreme Court's analysis in *Machinists v. Central Airlines,* 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963), requires a finding of jurisdiction.[3] In that case the Court held that a suit on a contract entered into pursuant to the Railway Labor Act, and intended to satisfy obligations imposed by the Act, arose under the laws of the United States within the meaning of § 1331. In contrast, the contract in question here was not executed pursuant to any Act of Congress. The Interstate Commerce Commission was involved only insofar as it had the authority to approve or deny the contemplated sale. Nor was this a contract entered into to satisfy any statutory obligation.

Appellees also contend that *Florida E. Coast Ry. Co. v. Jacksonville Terminal Co.,* 328 F.2d 720 (5th Cir. 1965), supports a finding of jurisdiction. That case, however, involved the interpretation of a contract which was *approved* by the ICC. Indeed, the "contract would have been illegal but for the order of the Interstate Commerce Commission approving it." 328 F.2d at 722. In the instant case, the Commission approval sought was for the sale contemplated by the contract, not for the contract itself. The contract had legal force as between the parties whatever action the ICC took. Section 4 clearly evidences that intention. Moreover, in *Jacksonville Terminal Co.,* it was contended that conduct giving rise to

---

**1.** Brief for Appellant 12 (emphasis added); *see also,* Brief for Appellees 2 ("The focal point of the controversy in this proceeding is the interpretation to be given to Section 4 of the Agreement.").

**2.** Record 157 (Finding of Fact No. 5) (emphasis added); *see also,* Record 163 (Conclusions of Law Nos. 4, 5, 6).

**3.** At oral argument, counsel for appellant conceded the lack of jurisdiction.

the suit violated the terms of the statute itself. No such allegation is involved here. Finally, the contract itself was not authorized by the statute, as was the contract in *Jacksonville Terminal Co.*

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), is more instructive. It involved interpretation of a contractual provision which conditioned the defendant's obligation of performance upon issuance of a "certificate of public convenience and necessity" by the Federal Power Commission. Plaintiff brought suit for alleged breach of contract, claiming that it had received a certificate of public convenience within the meaning of the Natural Gas Act. The Supreme Court held that such a collateral question of federal law did not convert a basic breach-of-contract action into a case arising under federal law. *Id.* at 671–73, 70 S.Ct. at 878. *See also, Gully v. First Nat'l Bank*, 299 U.S. 109, 115, 57 S.Ct. 96, 81 L.Ed. 70 (1936).

In the case before us, there is not even a collateral question of federal law. In *Skelly Oil Co.*, the contract language was identical to the phraseology in § 7(c) of the Natural Gas Act, and the Court recognized that the language might have a scope independent of the proper construction of the statute.

Similarly, although the term "final administrative order" may have a specialized meaning at the Interstate Commerce Commission, the same term as used in Section 4 of the contract has an independent scope. Indeed, the parties have conceded this point, for they agree as to the meaning accorded the term by the Commission.

This suit involves the interpretation of a private contract governed by California law. Our independent inquiry indicates that there is not complete diversity of citizenship.[4] Consequently, we hold that the district court had no jurisdiction to accept removal of the suit from state court.

Reversed and remanded, with instructions to remand to the state court.

4. On an earlier appeal, a panel of this court indicated in passing that it understood the case to be in federal court as a diversity action.

*Mendenhall v. Currier*, No. 74–1467 (filed August 7, 1975).